**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert M. NORWOOD,
Defendant-Appellant.**

No. 85–1558.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 27, 1985.

Decided Aug. 20, 1986.

---

Richard L. Zaffiro, West Allis, Wis., for defendant-appellant.

Stephen J. Liccione, U.S. Atty's. Office, Milwaukee, Wis., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, and ESCHBACH, Circuit Judge, and SWYGERT, Senior Circuit Judge.

ESCHBACH, Circuit Judge.

The primary questions presented in this appeal involve the effect of the erroneous exclusion of certain testimony as hearsay and the propriety of a jury instruction on the element of knowledge. For the reasons that we state below, we will affirm.

## I

Between October 9 and 12, 1984, Catherine DeLong was mailed, but never received a Mastercharge credit card bearing the name of her father John DeLong. On October 18, 1984, Robert Norwood used this card to make a purchase of $196.37 at a Target store in Milwaukee, Wisconsin. On November 6, 1984, Norwood was indicted on one count of violating 18 U.S.C. § 1708.[1]

After a two-day jury trial, he was convicted and sentenced to five-years imprisonment (which sentence is to be served consecutively with another sentence on a prior conviction) and to make restitution of $196.37.

## II

### A. *Exclusion of Evidence as Hearsay*

■ 18 U.S.C. § 1708 prohibits the knowing possession of material stolen from the mails. The offense requires possession of property stolen from the mails with the knowledge that the property was stolen, but does not require knowledge that the property was stolen from the mails. *See Barnes v. United States*, 412 U.S. 837, 847, 93 S.Ct. 2357, 2363, 37 L.Ed.2d 380 (1973).

Norwood did not dispute that the credit card was stolen, and that he had it in his possession. Instead, he defended himself on the theory that he believed that the card was not stolen. According to the defense's opening statement, Norwood and his brother-in-law John Smith agreed to move the belongings of an individual named Jeffrey [2] into the apartment of Norwood's younger brother Anthony in return for payment from Jeffrey. After Norwood and Smith completed the move, Jeffrey was unable to pay them. When Norwood and Smith returned the following day to Anthony's apartment, Jeffrey handed Norwood a Mastercharge credit card bearing John DeLong's name. Jeffrey stated that the credit card belonged to his "date" (both Antho-

1. 18 U.S.C. § 1708 provides:
   Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein; or
   Whoever steals, takes, or abstracts, or by fraud or deception obtains any letter, postal card, package, bag, or mail, or any article or thing contained therein which has been left for collection upon or adjacent to a collection box or other authorized depository of mail matter; or
   Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted—
   Shall be fined not more than $2,000 or imprisoned not more than five years, or both.

2. Because there was disagreement between the defense's witnesses as to the individual's last name, we will refer to him simply as Jeffrey. We also will use Norwood to refer to the defendant Robert Norwood, rather than to his brother Anthony.

ny Norwood and Jeffrey are homosexual) and that he (Jeffrey) was authorized to use it. Norwood asked his brother Anthony whether this was true. Anthony told Norwood that it was okay and that he had observed Jeffrey using his dates' cards in the past without any problems. Norwood then took the credit card and used it on two occasions. He later returned it and the receipts for his purchases to Jeffrey, and reimbursed Jeffrey for the cost of his purchases that exceeded the payment upon which they had agreed.

After the government rested its case, the defense called three witnesses—John Smith, Anthony Norwood, and Rosemary Shorty (allegedly a friend of Jeffrey)—to support its theory of the case. The government objected on the ground of hearsay to all testimony concerning Jeffrey's statements to Norwood. Defense counsel argued that the statements were not hearsay because they were offered to show that the statements were made, rather than to

prove the truth of the matter asserted. The district court nevertheless sustained the objections.[3] *See* Tr. 127–33, 135–36, 148, 151–52.

■ Norwood maintains on appeal that Jeffrey's statements to Norwood are not hearsay. We agree. "When it is proved that D made a statement to X, with the purpose of showing the probable state of mind thereby induced in X, ... the evidence is not subject to attack as hearsay." C. McCormick, *McCormick on Evidence* § 249 (3d ed. 1984); *see also* J. Wigmore, 6 *Wigmore on Evidence* § 1789 (Chadbourn rev.1976). In this case, Norwood did not dispute that the credit card was stolen. Instead, he claimed that he was not aware that the credit card was stolen. Testimony about what Jeffrey said to Norwood was not offered to prove the truth of the matter asserted, but to establish the statements' effect upon Norwood's state of mind, and, therefore, was not hearsay.[4] *Cf. Tennes-*

---

3. Contrary to the government's contention in its appellate brief, defense counsel, as is amply illustrated by the transcript of the exchange following the government's first hearsay objection, made clear from the outset that he was not offering Jeffrey's statements for the truth of the matter asserted:

    Q. Now, during the course of the work you were doing or afterwards, did the question of payment come up?
    A. Definitely, and he [Jeffrey] mentioned that—
    MR. LICCIONE: Objection at this point, Your Honor, as far as the testimony of any non-declarant as hearsay.
    THE COURT: Any theory on that, Defendant?
    MR. BAKER: Your Honor, I think that Mr. Norwood is entitled to present a defense, entitled to present an explanation of how he came into possession of—
    THE COURT: No doubt about that; but the question is, the objection is hearsay, and I asked if you had an exception to the hearsay rule that you were advancing, and I gather there is not. Huh?
    MR. BAKER: No, I am saying to the Court that these statements regarding explanation of how he came up with the charge card are not being offered for the truth of the matter asserted, but for the fact that they were said.
    THE COURT: Oh, they are being offered for the truth of the fact asserted.
    Objection sustained.
    Tr. 127–28. Following another objection, defense counsel stated that he was "offering that

statement not to prove the truth of the assertion that it was the date card, I am offering that statement for its effect on Mr. Robert Norwood's mental state at the time of the receipt of that card." Tr. 133. The district court nevertheless ruled, "I don't even think we have to have a side bar. I think that's coming in for the truth of the facts asserted. Sustained." *Id.*

4. We exclude out-of-court statements as hearsay for several reasons. *See generally* C. McCormick, *McCormick on Evidence* § 245 (3d ed. 1984). First, the declarant, that is the person who made the statement, rather than the intermediary who relates it, was not under oath when he made the statement. Second, the declarant is not present at trial. His absence deprives the trier-of-fact of the opportunity to assess the declarant's demeanor and credibility. Third, the declarant is not subject to cross-examination. Indeed, in criminal cases, the denial of the defendant's right to test the declarant's statements in the crucible of cross-examination rises to constitutional magnitude. *See Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

    These reasons for excluding testimony as to an out-of-court statement come into play, however, only when the out-of-court statement is offered to prove the truth of the matter asserted. An out-of-court statement that is offered to establish its effect upon a hearer, rather than to prove the truth of the matter asserted, is no different than any other out-of-court event about which a witness might testify.

*see v. Street,* —— U.S. ——, ——, 105 S.Ct. 2078, 2081–83, 85 L.Ed.2d 425 (1985) (confession of co-defendant not offered to prove truth of the matter asserted is not hearsay); *United States v. Rubin,* 591 F.2d 278, 283 (5th Cir.) (statements offered to establish their effect on defendant's state of mind are not hearsay), *cert. denied,* 444 U.S. 864, 100 S.Ct. 133, 62 L.Ed.2d 87 (1979); Fed.R.Evid. 801(c) Advisory Committee Note ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay.").

■ The district court thus erred by excluding testimony concerning Jeffrey's statements to Norwood. We therefore must determine whether this error was harmless. *See* Fed.R.Crim.P. 52(a); Fed.R.Evid. 103(a); *United States v. Cerro,* 775 F.2d 908, 916 (7th Cir.1985) (harmless error analysis applies to erroneous exclusion, as well as to erroneous admission, of evidence). Having carefully reviewed the trial transcript as a whole, we believe that Norwood was able to bring before the jury evidence that supported the theory of the case that defense counsel presented in his opening argument.

Anthony Norwood testified that Norwood questioned Jeffrey as to how it was that Jeffrey had the credit card, and that Jeffrey offered an explanation. Tr. 151. Most importantly, Anthony Norwood testified that Norwood asked him (Anthony) whether "this was okay," and that Anthony told Norwood that "it was okay because [he] ... had observed Jeffrey with the use

Since Jeffrey's statements to Norwood were not offered to prove the truth of the matter asserted, the reasons for excluding a statement as hearsay do not even arise. The defense witnesses, who were declarants who testified as to an out-of-court event, *viz.,* Jeffrey's statements to Norwood, were under oath. They were present in court so that the jury could observe their demeanor and assess their credibility. They also were subject to cross-examination by the government.

5. It is true that Jeffrey's exact words did not make it into evidence. Nevertheless, Anthony Norwood's testimony that he told his brother

of a date's credit card before." Tr. 150. Anthony Norwood further testified that Jeffrey had permission to use the credit card before, and that he (Anthony) also had used some of his "dates' " credit cards. *Id.* Since Anthony Norwood was a key witness, the defense called him as its last witness. His testimony was thus the last evidence that the jury heard before it retired to deliberate.

Notwithstanding the district court's evidentiary error, Norwood thus was able to present to the jury his side of the case.[5] The jury simply chose not to believe it. We therefore conclude that the district court's evidentiary error did not injuriously influence the jury's verdict, *see United States v. Lane,* —— U.S. ——, ——, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986), and accordingly was harmless. *Cf. Cerro,* 775 F.2d at 916–17 (erroneous exclusion of evidence was harmless); *United States v. Brown,* 785 F.2d 587, 589–90 (7th Cir.1986) (same).

B. *Knowledge Instruction*

■ The district court gave the jury the following instructions on the element of knowledge:

When the word "knowingly" is used in these instructions, it means that the Defendant realized what he was doing and was aware of the nature of his conduct and did not act through ignorance, mistake or accident.

Knowledge can seldom be proved by direct evidence. Knowledge may be proved by the Defendant's conduct and by all facts and circumstances surrounding the case.

Robert that "it was okay" because Anthony had seen Jeffrey use dates' credit cards was before the jury, and does not differ from what Jeffrey allegedly told Robert Norwood. Since the excluded evidence goes to the element of knowledge, the crucial question is whether Robert Norwood believed what allegedly was told to him. The jury did not accept that Norwood believed what he allegedly was told by his younger brother. It therefore is exceedingly unlikely that the jury would have accepted that Norwood believed the same statements when they allegedly were made by a person whom he had only recently met.

Guilty knowledge cannot be established by demonstrating negligence or even foolishness on the part of a Defendant. However, it is not necessary that the Government prove to a certainty that a Defendant knew that the materials were stolen....

Such knowledge is established if the Defendant was aware of a high probability that the materials were stolen[, u]nless the Defendant actually believed that the materials were not stolen[. T]hus if you find that a Defendant acted with reckless disregard of whether the materials were stolen and with a conscious purpose to avoid learning the truth, the requirement of knowledge would be satisfied unless Defendant actually believed that they were not stolen.

Tr. 201–02. Norwood objected to this instruction.[6] Tr. 211.

Norwood recognizes that knowledge may be inferred from evidence that the jury was aware of a high probability that the item was stolen, and that the defendant deliberately avoided further knowledge. *Cf. Barnes*, 412 U.S. at 843–46, 93 S.Ct. at 2361–63 (knowledge that property is stolen may be inferred from possession of stolen property). He contends, however, that the instruction permits a jury to convict after finding only that the defendant recklessly, rather than deliberately, avoided further knowledge. We disagree.

It is axiomatic that jury instructions must be read as a whole. *See, e.g., United States v. Thibodeaux*, 758 F.2d 199, 202 (7th Cir.1985). The term "reckless" appears only once in the challenged instructions. On that occasion the requirement that the defendant "acted with reckless disregard of whether the materials were

stolen" is joined by the conjunction "and" to the condition that the defendant acted "with a conscious purpose to avoid learning the truth." Thus, the jury could not have convicted Norwood unless it found that the defendant acted with a conscious purpose to avoid learning the truth, *i.e.*, deliberately.

Moreover, the jury was instructed that the defendant must have "realized what he was doing" and must have been "aware of the nature of his conduct." It was further told that knowledge was different than "ignorance," "mistake," "accident," "negligence," or "foolishness." Thus, this instruction does not permit an innocent individual to blunder his way into a prison cell.[7]

### C. Remaining Challenges

Norwood raises several additional challenges to his conviction, which we will consider briefly.

### 1. Pre-trial Identification

█ At trial four witnesses who worked or were present at a Milwaukee Venture store identified Norwood as having made purchases at the store with the credit card bearing John DeLong's name. Tr. 44, 48, 56, 58. Although he did not object at trial, Norwood argues on appeal that a suggestive pre-trial photographic display caused a substantial likelihood of misidentification. Nevertheless, the sole purpose of the courtroom identifications was to establish that Norwood possessed the stolen credit card. Norwood admitted that he possessed the stolen credit card. Indeed, he elicited testimony from John Smith that he used the credit card to make purchases at the same

---

6. The record reveals that the district court discussed the instructions with counsel the evening before and the morning of the second day of trial. Tr. 211. It, however, did not afford counsel an opportunity to state on the record any objections to its instructions until after the jury had retired. Tr. 209. Fed.R.Crim.P. 30 seems to require that counsel be given an opportunity to object on the record before the jury retires to consider its verdict. Moreover, we recommend this as the better practice because the district court, should it find an objection persuasive,

would not have to "call the jury back and change instructions." Tr. 210.

7. The instruction was drawn from *United States v. Bright*, 517 F.2d 584 (2d Cir.1975), and *United States v. Jacobs*, 475 F.2d 270, 287 (2d Cir.), *cert. denied*, 414 U.S. 821, 94 S.Ct. 131, 38 L.Ed.2d 53 (1973). We express no opinion as to the propriety of this instruction other than our conclusion that the instruction is not erroneous.

Venture store at which the government's witnesses placed him. Tr. 134. Since there is no doubt that Norwood had the stolen credit card in his possession, any possible taint in the identifications at trial that might have been caused by a suggestive pre-trial photographic display is harmless beyond a reasonable doubt.

### 2. *Ineffective Assistance of Counsel*

■ Norwood asserts that three errors on the part of his trial counsel deprived him of effective assistance of counsel. First, he contends that his trial counsel was ineffective because counsel failed to call him to testify in his defense. We disagree. To prove a constitutional violation, Norwood "must show that [his trial] counsel's performance was deficient," and "that the deficient performance prejudiced the defense." *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984). To establish that his trial counsel's performance was deficient, he must overcome the "strong presumption that counsel's conduct ... [fell] within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. In other words, he must prove that the challenged action cannot be considered sound trial strategy. *Id.* As the Supreme Court has recognized, "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id.* Thus, a challenged action should be considered sound trial strategy whenever a competent attorney might have taken the action in the particular case.

By testifying in his defense, the defendant waives the privilege against self-incrimination. Taking the stand may permit the government to admit damaging evidence to impeach the defendant's credibility. The defendant's testimony also may expose him to perjury charges. Thus, the decision not to place the defendant on the stand is a classic example of what might be considered sound trial strategy. In this case, Norwood committed the offense for which he was convicted while he was on parole for having been convicted of a similar offense in 1982. Since calling Norwood to the stand would have permitted the government to bring his prior conviction before the jury, counsel's decision not to have Norwood testify clearly should be considered sound trial strategy.

■ Second, Norwood argues that his trial counsel's failure to seek the services of an investigator to locate Jeffrey constituted ineffective assistance of counsel. 18 U.S.C. § 3006A(e) authorizes appointed counsel to request investigative services necessary for an adequate defense.[8] Of course, the defendant must articulate a reasonable basis for his request. *See United States v. Goodwin,* 770 F.2d 631, 634–35 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 858, 88 L.Ed.2d 897 (1986). In this case, Norwood gave his attorney very few clues very late in the proceedings. Norwood knew only Jeffrey's first name. It appears that Jeffrey frequently changed his last name: Anthony Norwood believed it to be Carson, but Rosemary Shorty thought that it was Osborne. Tr. 139, 145. It also seems that Jeffrey had the habit of briefly moving in with people and leaving suddenly without any word as to where he might be found. Tr. 143, 155. Norwood thus was unable to supply his trial counsel with Jeffrey's surname or address.

Moreover, it appears that Norwood did not immediately inform his trial counsel of Jeffrey's existence. On December 7, 1984, one month after Norwood was indicted, defense counsel informed the government that Norwood intended to offer an alibi defense. In his response to the government's alibi demand under Fed.R.Crim.P. 12.1, trial counsel stated that "on October 18, 1984 at approximately 9:00 p.m. Robert Norwood was at his residence located at 6922 W. Herbert Avenue, Milwaukee, Wis-

---

8. Indeed, trial counsel took advantage of § 3006A(e) to request a handwriting analyst to determine whether the signatures on the stolen credit card and the receipts for purchases made with the card were Norwood's.

consin and that he intends to rely on Laura Norwood, ... Sharon Smith, ... Tommy Allison, ... and Shelda Newill ... to establish his alibi." It was not until the final pre-trial conference on February 1, 1985, that trial counsel advised the court that Norwood was withdrawing his alibi defense and was proceeding to trial on another theory.[9] Norwood's trial began on February 25, 1985.

Still, even on the eve of trial, counsel, as soon as Norwood told him of Jeffrey's existence, could have immediately requested an investigator; however, we believe that his decision not to do so was within the wide range of reasonable professional assistance. "[I]f defense counsel fails to search for ... potential witnesses when he has not been provided with their last names or addresses and the potential value of their testimony is questionable, he has not acted unreasonably." *United States ex rel. Kleba v. McGinnis,* 796 F.2d 947, 961 (7th Cir.1986) (Cudahy, J., concurring in part and dissenting in part). At best, Jeffrey's testimony as to what he told Norwood would duplicate that of John Smith and Anthony Norwood. Given that his testimony might have exposed him to prosecution, Jeffrey might have asserted his privilege against self-incrimination. He might also have contradicted in whole or in part John Smith's and Anthony Norwood's version of what he told Norwood. Since the potential value of Jeffrey's largely cumulative testimony was questionable, trial counsel's choice not to request an investigator can be considered sound trial strategy. *See Kleba,* 796 F.2d at 955–58 (majority opinion); *United States v. Zylstra,* 713 F.2d 1332, 1338–39 (7th Cir.), *cert. denied,* 464 U.S. 965, 104 S.Ct. 403, 78 L.Ed.2d 344 (1983); *United States v. Decoster,* 624 F.2d 196, 209–10, 238–39 (D.C. Cir.1976) (en banc) (plurality and concurring opinions).

■ Third, Norwood asserts that his trial counsel was ineffective in that he did not call Norwood to speak at the sentencing hearing. We disagree. As Norwood concedes, his trial counsel brought out "some positive factors ... regarding the defendant as part of his ... sentencing argument," and also called Norwood's wife to speak on his behalf. Appellant's Brief 35. Trial counsel reasonably might have concluded that it was wiser for other individuals to speak for Norwood. Because counsel's challenged actions can be considered sound trial strategy within the wide range of reasonable professional assistance, we conclude that Norwood was not denied effective assistance of counsel.

### 3. *Sentencing*

■ Norwood was sentenced to five-years imprisonment, which is to be served consecutively with his sentence on a similar offense. This sentence is the maximum allowed for a violation of 18 U.S.C. § 1708. Norwood argues only that the sentence is unduly harsh. We "may not reduce or change a sentence imposed within statutory limits 'unless the trial court relied on improper or unreliable information in exercising its discretion or failed to exercise any discretion at all in imposing the sentence.'" *United States v. Schmidt,* 760 F.2d 828, 833 (7th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 86, 88 L.Ed.2d 71 (1985) (quoting *United States v. Ely,* 719 F.2d 902, 906 (7th Cir.1983), *cert. denied,* 465 U.S. 1037, 104 S.Ct. 1313, 79 L.Ed.2d 710 (1984)). Norwood does not assert that the district court considered any impermissible factor. Moreover, the district court considered Norwood's circumstances, the nature of the offense, and the fact that Norwood committed this offense while on parole for a similar conviction. We therefore will not disturb the district court's exercise of its discretion.

We have considered Norwood's remaining contentions and have found them to be without merit.

---

**9.** Norwood announced his decision to withdraw his alibi defense only after his motion to suppress his identification by four government witnesses was denied on December 10, 1984, by the magistrate to which the matter had been referred.

III

For the reason stated above, Norwood's conviction is

AFFIRMED.