**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kathryn Joy MOORE,
Defendant–Appellant.**

**No. 87–2247.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 12, 1988.

Decided April 22, 1988.

---

Carmen Piasecki, South Bend, Ind., for defendant-appellant.

Clifford D. Johnson, Asst. U.S. Atty., James G. Richmond, U.S. Atty., So. Bend, Ind., for plaintiff-appellee.

Before WOOD, FLAUM and KANNE, Circuit Judges.

KANNE, Circuit Judge.

A jury convicted Kathryn Joy Moore of one count of conspiring to transmit and present altered postal money orders and five counts of transmitting and presenting altered postal money orders. Moore appeals from her conviction arguing that the admission into evidence of seventeen exhibits, which only remotely tended to prove her state of mind, constituted reversible error. We find the district court did not commit reversible error in admitting the exhibits, and therefore affirm.

During February and March of 1982, defendant-appellant, Kathryn J. Moore, received six money orders in two letters from Frank Baker, Jr., an inmate at the Michigan City State Prison in Indiana.[1] Each money order was payable to Moore in the apparent amount of $261.00. Moore, then living in Texas, negotiated the money orders at her local post office and two stores by endorsing the money orders using her own name and social security number.

In 1982, postal agents, investigating a massive money order scheme involving altered money orders originating primarily from the Michigan City prison, met with Moore and informed her that the money orders she had cashed had been altered from $1.00 to $261.00. Moore agreed to cooperate with the government's investigation.

Moore admitted that she had endorsed the six money orders she received from Baker but claimed she did not know they were altered. She provided the government with six letters from Baker, written between January 26, 1982 and March 8, 1982, in which Baker referred to a "money scheme." Two of the 1982 letters con-

---

1. Moore and Baker had known each other for some time and Baker wrote Moore on a regular basis.

tained the altered money orders. Moore also turned over seventeen other letters from Baker, written between April 24, 1981 and December 17, 1981, in which Baker made no reference to money orders but in which he asked Moore to procure drugs.[2]

At trial, Moore conceded that she received and cashed the money orders which formed the basis of the charges against her. Moore argued, however, that she did not know they had been altered and thus, she could not be found guilty of a crime which required proof of specific intent to negotiate altered money orders.

■ In an attempt to prove Moore knew the money orders were altered, the government introduced not only the six letters from Baker, written in 1982 and referring to a money scheme, but also the seventeen letters sent in 1981 containing references to drugs—but no references to a money scheme. Moore objected to the introduction of the 1981 letters, arguing they were irrelevant and inadmissible as hearsay. The government argued that they should be admitted under Fed.R.Evid. 801(d)(2)(E) as a statement of a co-conspirator or under Fed.R.Evid. 404(b) as evidence of other crimes, wrongs or acts.

Moore renewed her objection, pointing out that the 1981 letters pre-dated the conspiracy alleged in the indictment. She argued that since Frank Baker, Jr., was named as a co-conspirator in the indictment under which Moore was charged, statements made by him to her *before* and not related to the conspiracy, were inadmissible under Rule 801(d)(2)(E). Moore also asserted that the letters were irrelevant because they contained no evidence of any crimes or wrongful acts on her part and at best, related only to Baker's activities.

In response, the government argued that although there was no evidence Moore ever responded to Baker's 1981 requests for drugs, the letters put Moore "on notice" that Baker was likely to engage in illegal schemes to obtain money. Thus, when Moore actually received postal money orders from Baker a year later, she should have known that they were altered.

The district court agreed that the letters pre-dated the conspiracy and were not admissible under the co-conspirator hearsay exception of Rule 801(d)(2)(E). Moreover, the court agreed that the letters were evidence of Baker's, not Moore's, tendencies to engage in wrongful acts. The court therefore declined to admit them under Rule 404(b).[3] However, the district court then ruled that the 1981 letters were admissible under the general hearsay definition,[4] since they were not being introduced to prove the truth of the matters asserted in them.

The court found that the letters were admitted not to prove Baker's numerous requests for drugs, but rather, to prove the effect those letters had on Moore's state of mind. In other words, the district court permitted the introduction of the letters as evidence of Moore's knowledge of Frank Baker's propensities.

On appeal, Moore argues that the letters, relating to Baker's other activities, do not tend to prove that she knew the money orders she received a year later were altered. Thus, their admission served only to prejudice the jury against her and caused the jury to find her "guilty by association."

**2.** Baker apparently intended to resell the drugs in prison purportedly to obtain money to fund further appeals in his case.

**3.** The district court did make a comment on the record that the 1981 letters could probably have been admitted under Rule 404(b). We disagree. Evidence of other crimes, wrongs or acts is admissible, not to prove the character of the actor, but rather, to prove the plans, motives or intentions of the actor. The government correctly asserts evidence of other crimes, bad acts or wrongs being introduced need not be those of the defendant *but* incorrectly asserts those

matters may be used to prove the plans, motivations or intentions of someone other than the actor. Baker's other bad acts or wrongs were not admissible under Rule 404(b) to prove *Moore's* plans, knowledge or intentions, only his own.

**4.** Federal Rule of Evidence 801(c) states:
(c) HEARSAY.—'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence *to prove the truth of the matter asserted.* (emphasis added).

In *United States v. Norwood*, 798 F.2d 1094, 1097 (7th Cir.1986), we explained:

An out-of-court statement that is offered to establish its effect upon a hearer, rather than to prove the truth of the matter asserted, is no different than any other out-of-court event about which a witness might testify.

In *Norwood*, the defendant claimed he did not have the requisite criminal intent to commit the crime with which he was charged—possessing a stolen credit card—since he did not know the credit card was stolen. In support of this defense, the defendant offered evidence that an out-of-court declarant told him the credit card belonged to the declarant's date and that the defendant was free to use it. The district court excluded the evidence as hearsay. On appeal this court found the proffered evidence admissible. We said:

In this case, Norwood [the defendant] did not dispute that the credit card was stolen. Instead, he claimed that he was not aware that the credit card was stolen. Testimony about what Jeffrey [the out-of-court declarant] said to Norwood was not offered to prove the truth of the matter asserted, but to establish the statements' effect upon Norwood's state of mind, and, therefore, was not hearsay.

798 F.2d at 1097.

In this case, Moore's defense also concerned her state of mind. She asserted that she did not know the postal money orders she negotiated had been altered. Moore thereby injected the issue of her knowledge and thus, her state of mind into the trial. The government then introduced the 1981 letters to prove that Moore should have known that the money orders were altered given Baker's illegal tendencies. Just as evidence of the out-of-court declarant's statements were used in *Norwood* to show the defendant did not know the credit card was stolen, evidence of Baker's out-of-court statements were introduced to show that Moore should have known the postal money orders were altered.

While we agree that the seventeen letters admitted into evidence over Moore's objections were admissible to prove their effect on her state of mind, we are not certain what "effect" was being proved. Certainly, the 1981 letters in which Baker asked Moore to procure drugs to allow him to obtain money for a lawyer, were evidence Baker would go to great lengths to obtain money. Those letters may even have been evidence that Moore knew Baker would engage in illegal activities to obtain money. However, the statements made by Baker in the 1981 letters do not directly reveal to Moore that the money orders she received in 1982 had been altered. Nothing in the 1981 letters directly related to the postal money order scheme. Therefore, the letters could only be introduced to create an inference—the inference being that Moore should have known the money orders were altered given Baker's past suggestions to her.[5]

Still, simply because evidence tends to prove a material point, it is not automatically admissible. Under Fed.R.Evid. 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Certainly, the inference that Moore should have been aware the money orders were altered because of Baker's tendencies, as revealed in the 1981 letters, is "relevant."

However, Fed.R.Evid. 403 also requires a court to consider whether the probative value of relevant evidence may be outweighed by its prejudicial effect. In this case, the district court found that Rule 404(b) did not preclude the introduction of the 1981 letters.

Moore alleged that the introduction of the 1981 letters would cause the jury to evaluate her actions on the basis of her association with Baker. Thus, she asserted the harmful effect of the evidence greatly

---

5. Whether Moore was capable of drawing this inference is questionable. The evidence was that Moore had recurring problems with alcohol and that she endorsed the money orders using her own name and social security number. Both of these facts tend to mitigate the inference that she was or should have been aware that the money orders were altered.

outweighed the probative value of the evidence. Moore's contention that the jury might find her "guilty by association" was not without some plausibility. No evidence was introduced that Moore ever responded to Baker's 1981 requests for drugs by procuring them. She testified that she may have written and stated that she would look into it, but that she never did and never had any intention of doing so. Moreover, the letters contained quite a bit of personal information which could easily have portrayed Moore as a less favorable person in the eyes of the jury.

As Moore argued, the harmful effect of evidence seemingly outweighed the only slightly probative value of the 1981 letters (especially given the ample evidence the government had already introduced to prove Moore's knowledge). Yet, we do not reverse a district court simply because we would have decided an evidentiary issue differently.

On appeal, we will not find error in a district court's evidentiary determination unless the court "clearly abused its discretion in admitting the challenged evidence." *United States v. Hoffman*, 806 F.2d 703 (7th Cir.1986). "A district court has broad authority to control the admission of evidence...." *United States v. Rovetuso*, 768 F.2d 809, 815 (7th Cir.1985), *United States v. Machi*, 811 F.2d 991 (7th Cir.1987).

In this case, as we have said, the 1981 letters were relevant to Moore's state of mind and we defer to the district court's determination that any harm of introducing those letters was outweighed by their probative value.

Even if we were to find error in the admission of the 1981 letters, that error was harmless since the admission of those letters was cumulative in any event. Certainly in the context of all the evidence introduced at trial, it is clear that Moore knew or should have known the money

orders were altered. From the six letters mailed in 1982, in which Baker referred to a "money order scheme" and from the money orders themselves, a jury could easily have found that Ms. Moore knew the money orders were altered.[6]

We find therefore that the admission of the 1981 letters was not improper and the defendant's conviction is

AFFIRMED.

---

6. For example, in a letter written on February 10, 1982, Baker instructed Moore:
   I thought I would send about 5 at a time ... if you are near A (sic) big town, the ideal thing to do would be to go there and bust them in grocery stores.

Moore did receive six postal money orders in two letters and proceeded to cash some of them in grocery stores in Texas and Indiana.