**UNITED STATES of America**

v.

**Curtis REYNOLDS, William Parran.**

**Appeal of William PARRAN.**

**No. 82–5628.**

United States Court of Appeals, Third Circuit.

Argued April 25, 1983.

Decided Aug. 18, 1983.

Rehearing Denied Oct. 21, 1983.

George E. Schumacher, Federal Public Defender, W. Penn Hackney (argued), Asst. Federal Public Defender, Pittsburgh, Pa., for appellant.

J. Alan Johnson, U.S. Atty., Paul J. Brysh (argued), Asst. U.S. Atty., Pittsburgh, Pa., for appellee.

Before ADAMS, HIGGINBOTHAM, Circuit Judges, STAPLETON, District Judge*.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

William Parran, defendant/appellant, and a co-defendant, Curtis Reynolds, were indicted by a federal Grand Jury in the Western District of Pennsylvania. Count One of the three-count indictment charged that Parran and Reynolds, in violation of 18 U.S.C. § 371, conspired with each other to violate 18 U.S.C. § 1708 by possessing a Pennsylvania unemployment compensation check, knowing that the check had been stolen. It also charged that Parran and Reynolds conspired to violate 42 U.S.C. § 408(g) by using the social security number of the payee of the check, Stanford D. David, in an effort to cash the check. Counts Two and Three charged Parran and Reynolds with the substantive offenses alleged as the objects of the conspiracy in Count One. Reynolds pled guilty to Counts Two and Three immediately before trial. At their joint trial, Reynolds was tried as to Count One, and Parran was tried as to all three counts. Reynolds was found guilty on Count One, and Parran was found guilty on all three counts.

Parran appeals these convictions, relying on several grounds. Specifically, Parran argues that it was reversible error to admit into evidence co-defendant Reynolds' oral statement implicating Parran and to admit Parran's written statement incriminating himself. In addition, Parran argues that the district court abused its discretion by refusing to sever his trial from that of the co-defendant. Finally, Parran argues that, even when viewing the evidence in the light most favorable to the government, the evidence was insufficient to support the verdicts against him. We are persuaded by Parran on one issue,[1] that the district court erred in admitting into evidence the testimony from a postal inspector as to the statement Reynolds allegedly made after his arrest. In that statement Reynolds allegedly said in the presence of the postal inspector and Parran, "I didn't tell them anything about you." Because we believe that, in the context of this case, co-defendant Reynolds' statement was prejudicial hearsay evidence, its admission in this joint

---

* Honorable Walter K. Stapleton, of the United States District Court for the District of Delaware, sitting by designation.

1. We find that the defendant's written statement was properly admitted against him. In addition, we believe that but for the improper admission of the co-defendant's statement a severance was not necessary to assure the defendant a fair trial. Finally, we cannot say that the evidence viewed in the light most favorable to the Government was insufficient to support the verdict against the defendant.

trial for the purpose of proving Parran's conspiratorial endeavor, as well as the substantive offenses charged, constitutes reversible error.

## I.

The evidence at trial showed that during the Spring of 1982 the United States Postal Inspection Service was engaged in an effort to identify and prosecute individuals who stole checks from the United States mails. The service secured the cooperation of Chircosta Studio which informed it of individuals who obtained photo I.D. cards under "suspicious" circumstances.

On April 5, 1982 Parran and Reynolds entered Chircosta Studio for the purpose of obtaining a photo I.D. card for Reynolds. A studio employee telephoned the Service and informed it that two individuals in the studio "did not appear to know . . . the name and number . . . that they wanted to put on the I.D." Appendix ("App.") 16a. The caller also gave a physical description of the two men.

Shortly after receiving the call, three postal inspectors went to the studio and observed the appellant and co-defendant leave the studio together while conversing and looking at a photo I.D. card. They crossed the street together. When they reached the other side, Parran appeared to say something to Reynolds and then continued down the street as Reynolds entered the bank. Reynolds attempted to have a check cashed, but the teller refused to do so because Reynolds did not have an account with that bank. Reynolds left the bank and stood outside looking in the direction that Parran had gone. Reynolds then crossed the street where he was arrested by postal inspectors for possession of a check that was allegedly stolen from the mail. The postal inspectors testified that after Reynolds' arrest, as Parran approached him, Reynolds said to Parran: "I didn't tell them anything about you." App. 24a. It is this statement that Parran claims was inadmissible hearsay and erroneously introduced into evidence against him.

## II.

This case presents the issue whether the admission of codefendant Reynolds' out-of-court statement into evidence against appellant Parran at their joint trial constituted prejudicial error. The government argues that Reynolds' statement is not hearsay. Its theory is that the statement was not admitted to prove that Reynolds did not say anything about Parran; instead it was admitted to prove the conspiracy to defraud as well as the co-defendants' joint participation in the substantive offenses charged in Counts Two and Three. Because the statement was allegedly not admitted for the express truth of the matter asserted, the government argues that the statement cannot be considered hearsay under Rule 801(c) of the Federal Rules of Evidence.

Rule 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). It is well settled that evidence is inadmissible hearsay if its probative value depends on the truth of any assertion of fact it contains or on the credibility of someone not available for contemporaneous cross-examination, and if it does not fall within one of the exceptions to the hearsay rule.

### A. *Credibility of Declarant*

The theory of the hearsay rule . . . is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference. . . .

6 Wigmore, Evidence § 1766 (1976). Thus, when an utterance is used for the truth it asserts, its reliability is generally considered suspect unless the declarant is testifying in court and available for cross-examination. The declarant's availability is critical because his credibility determines the reliability of the inferential journey one necessarily takes from the declarant's utterance to the ultimate fact it is alleged to reflect. Tribe,

*Triangulating Hearsay,* 87 Harv.L.Rev. 957, 958 (1974).

Allowing a jury to draw inferences from an out-of-court statement admitted for the truth of a fact it asserts when the declarant is not available for cross-examination can lead to inaccuracies. One potential error involves ambiguity. The statement may have more than one meaning, and the declarant may have intended the statement to assert a fact other than that for which the statement is offered, or for which a jury considers it in determining the guilt or innocence of the defendant. The declarant's presence would be essential to eliminate such ambiguity. E. Morgan, *Hearsay Dangers and the Application of the Hearsay Concept,* 62 Harv.L.Rev. 177, 177–78 (1948).

Other potential errors concern the sincerity, perception and memory of the declarant. Without the declarant's availability for in-court cross-examination at the time his testimony is offered to prove a fact asserted, opposing counsel could not effectively represent his client by bringing out possible sources of error and gaps in his opponent's logic or in the ultimate inferences which his opponent seeks to draw. Moreover, though the jury is advised of the declarant's statement, the jury would be unable to hear and observe the absent declarant as a witness and therefore evaluate the declarant's demeanor. Thus, the leading authority on evidence concludes:

> The hearsay rule forbids merely the use of an extrajudicial utterance as an assertion to evidence the fact asserted (§ 1766, *supra*). Such a use would be testimonial, i.e., we should be asked to believe the fact because Doe asserted it to be true, precisely as we should be asked to believe Doe's similar assertion if made on the stand. What the hearsay rule forbids . . . is the use of testimonial evidence— i.e., assertions—uttered not under cross-examination.

Wigmore, *supra,* § 1788.

### B. *Truth of Statement's Content*

Out-of-court statements are not always hearsay. Thus, the Federal Rules of Evidence explain that "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Fed.R.Evid. 801(c) advisory committee note. The potential problems of hearsay discussed above are avoided because one would be interested only in the fact that a statement was made. Its probative value would depend on the witness testifying to what he heard, and, as such a witness, he would be subject to cross-examination. The problems of ambiguity, sincerity, memory or perception associated with hearsay are not present because we are concerned with the witness' account of *what* he heard, not the *truth* of what the declarant said.

Assume, for example, that the very fact in controversy was whether there was speech. The witness' testimony as to "the fact of [Reynolds' statement, "I didn't tell them anything about you"] rather than the content of the statement permits the inference [that there was speech] and that testimony involves no problem of the statement's ambiguity, or of sincerity, memory, or perception" of the declarant. Tribe, *supra* at 960–61. The reason is that it is the witness' personal experience that is the focus of the inquiry. Similarly, testimony recounting the above statement would qualify as non-hearsay if offered on the issue as to whether the declarant was capable of speaking English. Whether the content of the declarant's statement is true is irrelevant to the statement's probative value in the two examples above because it is offered for the fact that it was said. The statement clearly would be non-hearsay.

### III.

In the case before us the government argues that Reynolds' statement implicating Parran was not offered for the truth of the matter asserted. The government suggests that the statement, irrespective of its truth, is probative of defendant's guilt. The government, however, views what Reynolds asserted in a very narrow manner. Indeed, it suggests that the only assertion

contained in Reynolds' 'statement is its express assertion that Reynolds had not said anything to the arresting officers about Parran. Because the government did not offer Reynolds' statement into evidence to prove he had not said anything about Parran, at the time of Reynolds' arrest, the government concludes that the statement cannot possibly be hearsay.

██ This argument ignores what legal commentators have expressly recognized and what the courts have implicitly recognized. That is, statements containing express assertions may also contain implied assertions qualifying as hearsay and susceptible to hearsay objections. This situation arises when

> the matter which the declarant intends to assert is different from the matter to be proved, but the matter asserted, if true, is circumstantial evidence of the matter to be proved. In this situation too, the statement is subject to a hearsay objection.

D. Louisell & C. Mueller, Federal Evidence 94 n. 84 (1980); see also Tribe, supra at 958–61; Morgan, supra, at 189–90.

██ In the instant case the government seeks to use Reynolds' statement, "I didn't tell them anything about you," as circumstantial evidence "for the purpose of establishing the existence of a conspiracy between the two defendants, as well as their joint participation in the substantive offenses charged in Counts Two and Three of the indictment." Appellees brief at 7. The government argues that "[t]he significance of the statement was that it was made." Id. at 9.

Reynolds' statement is, however, ambiguous and susceptible to different interpretations. As the government uses it, the statement's probative value depends on the truth of an assumed fact it implies. Unless the trier assumes that the statement implies that Reynolds did not tell the postal inspectors that Parran was involved in the conspiracy to defraud, even though Parran was in fact involved, the statement carries no probative weight for the government's case. For if the trier assumes that the statement implied that Reynolds did not tell the postal inspectors that Parran was involved because there was nothing to tell, the statement has no relevance to the government's case. Its only relevance to the government's case is tied to an assumed fact of petitioner's guilt that the government argues the utterance proves.[2] Thus, depending on the interpretation given the content of Reynolds' statement, it is either probative or not. Consequently, we believe that, as the government uses it, the statement's relevance goes well beyond the fact that it was uttered. It is not merely intended to prove that Reynolds could speak, or that he could speak in English, or even that he directed a statement toward Parran. Instead, the government offers it to prove the truth of the assumed fact of defendant's guilt implied by its content.

The legal commentators referred to above would regard Reynolds' statement as inadmissible hearsay. The Supreme Court also has recognized that statements which plainly imply that a defendant was guilty of a crime for which he is on trial are considered hearsay if made out-of-court and

---

**2.** The instant case is distinguishable from *United States v. Alvarez-Porras,* 643 F.2d 54, 58 (2d Cir.1981); *United States v. Hassell,* 547 F.2d 1048, 1053 (8th Cir.), *cert. denied,* 430 U.S. 919, 97 S.Ct. 1338, 51 L.Ed.2d 599 (1979); and *United States v. Geaney,* 417 F.2d 1116, 1121 n. 4 (2d Cir.1969), where alleged hearsay statements by co-conspirators were admitted into evidence. In those cases, there was sufficient evidence, independent of the offered statements, to establish the existence of a conspiracy, and the offered statements were made during the course and in furtherance of the conspiracy. Under Rule 801(d)(2)(E) of the

Federal Rules of Evidence, such statements are not hearsay. In the instant case, however, there is virtually no evidence independent of Reynolds' statement to prove the existence of a conspiracy. Moreover, Reynolds' statement was not made during the course and in furtherance of a conspiracy. *See Krulewitch v. United States,* 336 U.S. 440, 444, 69 S.Ct. 716, 718–719, 93 L.Ed. 790 (1949). Finally, as a practical matter, the probative value of Reynolds' statement was for the truth of the matter that it impliedly asserted. Thus, under Rule 801, Reynolds' statement implicating Parran is hearsay.

the declarant is not subject to contemporaneous cross-examination in court.

In *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), the Supreme Court accepted as hearsay a statement made by a co-conspirator implicating the petitioner. A witness testified at trial that on the co-conspirator's return from his arraignment on murder charges the co-conspirator said: "If it hadn't been for that dirty ... Alex Evans [petitioner], we wouldn't be in this now." *Id.* at 77, 91 S.Ct. at 214. The testimony was admitted into evidence as a Georgia statutory co-conspirator exception to the hearsay rule, over petitioner's hearsay objections.

Although the express assertion of the co-conspirator's statement in *Dutton* is that the co-conspirator would not be in this situation but for Alex Evans, the statement was offered as circumstantial evidence to prove that Evans committed the murder. *Dutton* is a clear instance of the Supreme Court recognizing that a statement's implied assertion can constitute hearsay. Accordingly, we reject the government's suggestion in this case that only a statement's express assertion should be considered in deciding whether it constitutes hearsay.

In *Krulewitch v. United States,* 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949), petitioner was convicted of violating 18 U.S.C. §§ 2421 and 2422 for inducing a woman (the complaining witness) to go, and for transporting her, from New York to Florida for the purpose of prostitution. Petitioner was convicted also with conspiracy to commit these offenses in violation of 18 U.S.C. § 371. The complaining witness testified that the petitioner's alleged co-conspirator said: "It would be better for us two girls to take the blame than Kay (the defendant) because he couldn't stand it, he couldn't stand to take it." *Id.* at 441, 69 S.Ct. at 717. Although this statement was not offered to prove its express meaning, whether the defendant "couldn't stand to take it," the Court held that the statement was inadmissible because of the implied assertion of defendant's guilt that it contained. Again

we see the Court regarding a statement's implied meaning as hearsay.

We cannot find any distinction of substance between Reynolds' statement, "I didn't tell them anything about you," and the co-conspirator's statement: "If it hadn't been for that dirty ... Alex Evans, we wouldn't be in this now" (*Dutton*) ; or "It would be better for us two girls to take the blame than Kay (the defendant) because he couldn't stand it, he couldn't stand to take it" (*Krulewitch* ).

■ Like the statements in *Dutton* and *Krulewitch,* Reynolds' statement in this case was not offered for the purpose of proving its express meaning—that Reynolds did not say anything about Parran. Rather it was offered for the implied assertion that Parran was involved in the crimes for which the two were charged and tried. Therefore, we hold that the statement here, like those in *Dutton* and *Krulewitch,* constitutes hearsay because it was introduced to prove its implied assertion of Parran's guilt. Moreover, it is not admissible under any exception to the hearsay rule.

■ Having decided that the district court erred in admitting Reynolds' statement into evidence against defendants, we must decide whether the admission of this hearsay evidence against defendant constitutes prejudicial error. Not every admission of inadmissible statements can be considered reversible error. As the Supreme Court has stated, "[a] defendant is entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953). Parran argues that in this case the admission into evidence against him of the powerfully incriminating hearsay, in light of the little other evidence against him, violated his right to confrontation as secured by the Sixth Amendment. "The Sixth Amendment's right of an accused to confront the witnesses against him ... is a fundamental right...." *Dutton v. Evans,* 400 U.S. at 79, 91 S.Ct. at 215, *quoting Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 1067–1068, 13 L.Ed.2d 923 (1965). "[T]he right of cross-examination is included in the right of

an accused in a criminal case to confront the witnesses against him." *Pointer v. Texas,* 380 U.S. at 404, 85 S.Ct. at 1068.

In *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), petitioner and co-defendants were tried jointly for armed postal robbery. A postal inspector testified that one of the co-defendants had confessed that he and petitioner had committed the crime. The district court admitted this evidence of the co-defendant's confession against him, but gave clear and concise instructions to the jury to disregard this evidence in deciding the other co-defendant's guilt or innocence. Despite this cautionary instruction, the Supreme Court found the risk of prejudice resulting from the admission of the confession too great because "the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial." *Id.* at 135–36, 88 S.Ct. at 1628. Consequently, the court held the admission of hearsay evidence of the co-defendant's confession to be reversible error.

In this case there is much more than the mere risk of prejudice found so serious in *Brutton.* There is actual prejudice. Here, the powerfully incriminating hearsay statement was admitted into evidence against Parran and offered again by the government in its closing argument to the jury as circumstantial evidence of Parran's involvement in the conspiracy charged in Count One as well as the substantive offenses charged in Counts Two and Three.

The actual prejudice to Parran emerges upon review of the other marginal evidence admitted to convict him of the crimes charged in this case where neither defendant testified. There was evidence of Reynolds and Parran walking together and talking to one another, evidence that Reynolds had the photo I.D. card made in a name unknown to Parran, and evidence of the two looking at what appeared to be the photo I.D. card. Finally, there was evidence of alleged falsifications in Parran's written statement made out by him shortly after his arrest, specifically that Reynolds went to his car and whether Parran and Reynolds crossed a street together. In this case, the other evidence implicating Parran was sparse; therefore, the admission of Reynolds' inadmissible hearsay statement allegedly directed toward Parran, "I didn't tell them anything about you," clearly was prejudicial to Parran's case in general and specifically to the conspiracy count.

This is especially true because the defendant was unable to dispel this prejudice by cross-examination. The co-defendant did not testify and could not be compelled to testify at the joint trial. The potential for prejudice and the irremediable nature of the prejudice Parran experienced were recognized by the Advisory Committee on Rules in its explanation of Rule 14, Relief from Prejudicial Joinder:

> A defendant may be prejudiced by the admission in evidence against a co-defendant of a statement or confession made by that co-defendant. This prejudice cannot be dispelled by cross-examination if the co-defendant does not take the stand.

Fed.R.Crim.P. 14 advisory committee note.

Thus, in this joint trial, where the co-defendant did not take the stand, it was improper for the district court to admit into evidence, for the truth of the matter it impliedly asserted, co-defendant's out-of-court statement implicating defendant. Such a statement constituted inadmissible hearsay and its admission represents an error of such magnitude that we will reverse the judgment of the district court and remand this case for a new trial on all three counts.