STATE of Wisconsin, Plaintiff-Respondent,

v.

Theopolis WILSON, Defendant-Appellant.

Court of Appeals

*No. 90-0849-CR. Submitted on briefs October 26, 1990.—Decided January 16, 1991.*

(Also reported in 467 N.W.2d 130.)

On behalf of the defendant-appellant, the cause was submitted on the brief of *Hans P. Koesser* of Kenosha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Gregory M. Posner-Weber,* assistant attorney general.

Before Nettesheim, P.J., Brown and Scott, JJ.

SCOTT, J.   Theopolis Wilson appeals from a judgment convicting him of burglary as an habitual offender. We agree that certain testimony was erroneously excluded as impermissible hearsay. Because we conclude the error was not harmless, we reverse and remand for a new trial.

Wilson was charged with unlawfully entering the residence of John Herendon with the intent to steal property belonging to Herendon. Wilson's theory of defense at trial was that he thought he had consent to enter the dwelling to remove the particular items.

In support, he sought to introduce out-of-court statements allegedly made to him by May Lee Harries, Herendon's roommate. Wilson claimed that Harries had given him consent to enter the apartment to get the stereo and VCR because she needed money for drugs. Pre-trial attempts to serve Harries by both the state and the defense were unsuccessful. The trial court declared Harries unavailable and determined that her alleged statements were against her penal interest. Nevertheless, the trial court excluded the evidence as inadmissible hearsay. The court also repeatedly expressed concern that, if admitted, the testimony would impugn Harries' character. The jury found Wilson guilty and he appeals.

■

Hearsay is a statement, other than one made by the declarant while testifying at trial, which is offered to prove the truth of the matter asserted. Section 908.01(3), Stats. As he argued before the trial court, Wilson con-

tends here that Harries' alleged statements were not offered for their truth but for their effect on his state of mind—as evidence that he *believed* he had consent to enter to remove the items. He therefore concludes that the alleged statements are not hearsay, and thus were wrongly excluded.[1] We agree.

In reviewing evidentiary rulings, the question is not whether the reviewing court would have permitted the evidence to come in but whether the trial court exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record. *State v. Friedrich,* 135 Wis. 2d 1, 16, 398 N.W.2d 763, 770 (1987).

Here the trial court did not. Wilson was charged with burglary, contrary to sec. 943.10(1), Stats. The elements of that crime are intentional entry, lack of consent of the person in lawful possession, and intent to steal or commit a felony. *Id.* Wilson sought to prove that *he believed* that Harries had given him consent to enter the apartment in which she resided to remove certain items from it, thus negating at least the "state of mind" element of intent to steal.

This case is like *United States v. Norwood,* 798 F.2d 1094 (7th Cir.), *cert. denied,* 479 U.S. 1011 (1986). Norwood was convicted of knowingly possessing material stolen from the mail for using a credit card bearing someone else's name. Norwood had agreed to do some work for a friend for pay. Later, unable to pay, Jeffrey

---

[1]Wilson alternatively argues that even if Harries' alleged statements are hearsay, they were wrongly excluded nonetheless because Harries was unavailable and the statements were against her penal interest. *See* sec. 908.045(4), Stats. Having determined that the testimony was not hearsay, we need not reach this issue.

(the friend) instead gave Norwood a credit card and told him to make purchases in the agreed-upon amount. Jeffrey said the credit card, which bore a third party's name, belonged to a close friend who had authorized him to use it. Norwood used the card twice, then returned it and the receipts to Jeffrey. The card turned out to be stolen.

Norwood attempted to show he did not know the credit card was stolen. The government objected on hearsay grounds to all testimony concerning Jeffrey's statements to Norwood. The district court agreed with the government. The Seventh Circuit Court of Appeals did not. It held that the statements were not hearsay because they were not offered to prove the truth of the matter asserted, but to establish their effect upon Norwood's state of mind. *Id.* at 1097.

Here the state argues that the statements are subject to exclusion as hearsay even if they are not offered to prove the truth of the matter expressly asserted. In support, the state relies on a line of cases holding that statements containing express assertions may also contain implied assertions which qualify as hearsay and are thus susceptible to hearsay objections. *See, e.g., United States v. Reynolds,* 715 F.2d 99, 103 (3d Cir. 1983).

In *Reynolds,* Reynolds was arrested for possession of a check allegedly stolen from the mail. Postal inspectors testified that, after Reynolds' arrest, Reynolds said to Parran, a companion, "I didn't tell them anything about you." *Id.* at 101. At their joint trial, Parran claimed the statement was inadmissible hearsay; the government asserted it was introduced not to prove the express truth of the matter (that Reynolds did not tell them anything about Parran) but to prove the implied truth (existence of a conspiracy). *Id.* The district court allowed the evidence in. The Third Circuit Court of

Appeals reversed, holding that the implied assertion also qualified as hearsay because the statement's probative value depended solely on the truth of the implied fact. *Id.* at 103.

We conclude that the *Reynolds* line of cases is inapposite for several reasons: they are conspiracy cases, they involve joint trials, and the statements sought to be admitted had no probative value other than to prove the conspiracy. In other words, the probative value of the statements in the conspiracy cases was not that the statements were uttered, nor was it that they were introduced for their effect on the hearer's state of mind. Rather, their probative value depended solely on the assumed fact—conspiracy—which they implied.

Unlike in *Reynolds,* Wilson sought to introduce Harries' alleged statements solely for the fact that they were made—because that fact led to his claimed belief that he had consent to enter and remove the various items. Wilson did *not* seek to introduce Harries' statements as proof that she actually did—*i.e.,* had legal authority to—give consent. Where a declarant's statement is offered for the fact that it was said, rather than for the truth of its content, it is not hearsay. *See Reynolds,* 715 F.2d at 102. Furthermore, "[w]hen it is proved that D made a statement to X, with the purpose of showing the probable state of mind thereby induced in X . . . the evidence is not subject to attack as hearsay." *Norwood,* 798 F.2d at 1097 (quoting C. McCormick, *McCormick on Evidence* sec. 249 (3d ed. 1984)).

Used in the manner Wilson sought, we hold the evidence is not hearsay. To preclude this testimony was to preclude Wilson's presentation of a full defense. Any prejudicial impact on the jury could have been addressed

779

by directing the jury to confine its consideration of the evidence to a distinct and limited purpose. *See Tennessee v. Street,* 471 U.S. 409, 416–17 (1985). The jury could have been cautioned to consider the evidence only for its impact upon Wilson's intent and to not evaluate it for the truth of the matter—whether consent had, in fact, been given. Thus, to exclude the proffered testimony as inadmissible hearsay was an error of law. Moreover, the court's comment that the testimony might impugn Harries' reputation was an irrelevant consideration.

It is difficult to see how such exclusion here could have been, as the state urges, harmless error.[2] The test for harmless error is whether there is a reasonable possibility that the error contributed to the conviction. *State v. Dyess,* 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231–32 (1985). The burden of proving no prejudice is on the beneficiary of the error, here the state. *Id.* at 543, 370 N.W.2d at 232. Since evidence exists to support both Wilson's and the state's version of the events, we are unprepared to say that rejection of the evidence did not prejudice Wilson.

The testimony of various witnesses bears out that Wilson may have believed he had consent to enter to remove the items. Wilson testified that Harries, an acquaintance, had given him her car keys and, using her car, he drove to the apartment she shared with Herendon where "[t]he door was supposed to have been unlocked for me." He further testified that the door

---

[2]In *United States v. Norwood,* 798 F.2d 1094 (7th Cir.), *cert. denied,* 479 U.S. 1011 (1986), the court of appeals held that the erroneous exclusion of the evidence was harmless. The error was harmless, the court said, because the exclusion did not prevent Norwood from presenting his case to the jury; rather, "[t]he jury simply chose not to believe it." *Id.* at 1098.

"wasn't locked, but it was stuck, and I pushed it and it came open."

Furthermore, the "burglary" victim himself testified that, upon asking Wilson what he was doing there, Wilson responded, "[S]omeone sent me." And although Herendon first testified that the apartment door was "demolished," on cross-examination he conceded that its hollow-core construction was "kind of flimsy" and that "anybody could pop it open." Significantly, Herendon testified that he did not hear anyone enter the apartment or break the door; what woke him was the sound of Wilson disconnecting the VCR. In addition, Herendon testified that he normally would have been at work that morning, but having been out late at a holiday party the night before, he had come home early to rest—unbeknownst to Harries. Finally, he testified that Harries showed up at the apartment shortly after Wilson left. The police arrived about the same time, and when Herendon described Wilson to them, "[s]he knowed who I was talking about."

The two investigating officers also testified. One stated that the damaged door "was not a heavy, solid wood door," but "[i]t appeared brute force had been used" because the lock area around the doorknob and the wood of the door itself were broken. The other testified that the wood was splintered away from the lock and that the door was no longer operational. Although a number of photographs were taken of other evidence, however, none was taken of the door.

The jury was cautioned to disregard testimony relating to Harries' alleged statements.[3] The limiting instruc-

[3]The limiting instruction read:

May Lee Harries has not testified at this trial. There were questions asked of the defendant and others which suggested what Ms. Harries may or may not have said, if she said anything at all to the

tion apparently did not entirely dispel the jurors' confusion as to testimony regarding Harries, however. During deliberations, the jury sent out from the jury room a note which read: "What testimony involving conversation with May [Lee Harries] is to be considered hearsay?" This demonstration of interest in Harries' role bolsters our conclusion that a reasonable possibility exists that exclusion of the evidence contributed to the conviction. We reverse and remand for a new trial. *See Dyess,* 124 Wis. 2d at 543, 370 N.W.2d at 231–32.

*By the Court.*—Judgment reversed and cause remanded with directions.

____

defendant. You are specifically instructed to disregard any suggestion that statements were made of any sort by Ms. Harries to the defendant.