RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0086p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　　　　　*Plaintiff-Appellee,*<br><br>　　*v.*<br><br>ERIC DEWAYNE BOYD,<br>　　　　　　　　　*Defendant-Appellant.* | No. 08-6402 |

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 07-00003-003—Thomas A. Varlan, District Judge.

Argued: January 18, 2011

Decided and Filed: April 7, 2011

Before: SILER, GILMAN, and GRIFFIN, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Bradley L. Henry, Knoxville, Tennessee, for Appellant. Zachary Charles Bolitho, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Bradley L. Henry, A. Philip Lomonaco, Knoxville, Tennessee, for Appellant. Zachary Charles Bolitho, Tracy L. Stone, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee.

———————————

## OPINION

———————————

SILER, Circuit Judge. Eric Boyd appeals his conviction by a jury of (1) being an accessory after the fact to a carjacking that resulted in serious bodily injury and death in violation of 18 U.S.C. § 3, and (2) misprision of a carjacking that resulted in serious bodily injury and death in violation of 18 U.S.C. § 4. On appeal, Boyd alleges

1

evidentiary errors, duplicitous indictment, and prosecutorial misconduct.   For the following reasons, we **AFFIRM**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

**A.     Facts Leading to the Indictment Against Boyd**

On Saturday, January 6, 2007, Christopher Newsom and his girlfriend, Channon Christian, drove to dinner and planned to attend a party.  Newsom and Christian were later found brutally carjacked, raped, and murdered.  Newsom's body was discovered first, beside the railroad tracks in the early afternoon of January 7, 2007, by a train engineer.

Christian's mother soon filed a missing person report, and searchers found Christian's abandoned Toyota vehicle on Chipman Street in Knoxville.  In Christian's Toyota, the police found a fingerprint belonging to Lemaricus Davidson.  Davidson lived at 2316 Chipman Street, a short distance from where the Toyota was found.  When officers executed a search warrant at the residence later that day, they found Christian's body in a trash can in the kitchen.  Christian had semen in her body cavities and on her clothing, and DNA testing revealed that some of the semen belonged to Davidson.

The police then undertook a manhunt for Davidson.  Officers soon learned of a number of telephone calls between Davidson and Boyd.  Officers stopped a vehicle Boyd was driving, and asked him for information about Davidson's whereabouts.  Boyd initially denied knowing Davidson, but later told officers that "he wasn't going to do any time in jail" and would tell them where Davidson was hiding.  Boyd told the officers that Davidson was in a house that the two of them had broken into.

Boyd provided directions to the house.  The house was vacant with a "for sale" sign in the yard.  The officers arrested Davidson inside and found food wrappings, scraps of lettuce, a McDonald's bag, and a can of potato chips.  They also found clothing, a cell phone, binoculars, and a pistol.

Boyd voluntarily returned to the Knoxville police station later that day for a follow-up interview. He recounted details of Davidson's role in the carjacking and murders, which Davidson had related to him. Boyd stated that he agreed to help Davidson avoid arrest. Boyd also admitted seeing newscasts about the crimes prior to and during the time period that he assisted Davidson.

**B.     Boyd's Trial**

Boyd was indicted on two charges: (1) being an accessory after the fact to a carjacking leading to serious bodily injury and death, and (2) misprision of a felony. An individual is guilty of being an accessory after the fact when he, "knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment." 18 U.S.C. § 3. Misprision of a felony occurs when a person, "having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States." 18 U.S.C. § 4.

Prior to his trial, Boyd moved to exclude the portions of his videotaped interview in which he discussed the things Davidson told him about the carjacking, rapes, and murders. He argued that Davidson's statements were inadmissible hearsay and violated the Confrontation Clause. The district court denied the motion, determining that Davidson's statements to Boyd were non-hearsay offered to prove Boyd's knowledge, rather than the truth of the matter asserted. The court also found that the statements posed no Confrontation Clause issue.

At trial, the Government presented over 30 witnesses. The proof revealed that on January 9, 2007, Boyd took Davidson to Danielle Lightfoot's apartment. Boyd's cousin, Kevin Armstrong, later arrived at the apartment. Armstrong was surprised to see Davidson, because he knew Davidson was wanted by the police. While Boyd stood by silently, Armstrong told Davidson he should talk with the police. Davidson called Armstrong throughout the night asking for a ride "down west," which he refused.

At noon on January 10, 2007, Boyd and Davidson watched the local news at Lightfoot's apartment. A picture of Davidson flashed across the screen, and Davidson claimed his brother committed the reported crimes. Lightfoot soon left the apartment, telling Boyd and Davidson they could remain in her apartment until nightfall. When she returned later that night to find Boyd and Davidson still in her apartment, she asked them to leave.

While police officers searched for Davidson, Boyd and Davidson hid in an area behind the apartment complex. As Davidson hid in a ditch, Boyd went to Lakeisha Greer's apartment and tried unsuccessfully to obtain a ride for Davidson. Boyd returned to Davidson's hiding place, and the two then broke into a nearby vacant house. The next morning, on January 11, 2007, Boyd left the vacant house to get food for Davidson. To ensure they could communicate, Boyd gave Davidson his cell phone and developed a code system. Boyd would call Davidson twice in quick succession so that Davidson would know it was Boyd, and then Davidson would call Boyd back at the number that appeared.

When Boyd was on his way back to the vacant house that morning, he encountered Greer's sister, Leesa. Boyd told Leesa he was getting food for Davidson. Later that morning, Boyd went to Kadiatu Kamara's apartment. Kamara agreed to let Boyd use her phone. Telephone records show several calls were made in quick succession from Kamara's phone to Boyd's cell phone. Later that day, Boyd was stopped by the police and revealed Davidson's location.

Dr. Darinka Mileusnic-Polchan, the Chief Medical Examiner for Knox County, testified about the autopsies she performed on Christian and Newsom. She testified that 80% of Newsom's body was "severely charred" and smelled of gasoline. Newsom had been bound, gagged, and shot three times. She also testified that Newsom experienced "sexual trauma" prior to his death. Boyd did not object to Dr. Mileusnic-Polchan's testimony regarding Newsom's autopsy.

Dr. Mileusnic-Polchan then described the autopsy of Christian. She stated that Christian had been tied up, forced into a fetal position, and stuffed into the trash can. Christian was naked from the waist down with a trash bag tied over her head.

Dr. Mileusnic-Polchan's testimony continued into the evening, and she was asked to finish her testimony the following morning. After the jury was excused, Boyd offered to stipulate that Christian and Newsom suffered serious bodily injury and death. He argued that any further testimony by the medical examiner would be unnecessary and prejudicial. The Government argued that Boyd had refused to stipulate to "anything" prior to trial. The Government also responded that it was required to prove serious bodily injury and death, and it was entitled to prove those elements by testimony rather than stipulation.

The district court denied Boyd's motion, determining that a stipulation requires the agreement of both parties. It also held that Dr. Mileusnic-Polchan's testimony was relevant evidence, and its probative value was not substantially outweighed by the danger of unfair prejudice. The court stated that the jury would be instructed at the close of the case regarding the "parameters under which" it could make its decision.

The next morning, Dr. Mileusnic-Polchan described the severe sexual assault and blunt force trauma inflicted upon Christian. She concluded that Christian died from a combination of mechanical and positional asphyxia, which she described as a slow death that likely came in the afternoon or evening hours of January 7, 2007.

During jury instructions, the district court stated, "I want to emphasize that the Defendant is only on trial for the particular crimes charged in the second superseding indictment." The court further stated that "[t]he Defendant is not charged with actually committing the crime of carjacking which resulted in the death and serious bodily injury to another person. Instead, he is charged with helping someone else try to avoid being arrested, prosecuted or punished for that crime." As to Boyd's videotaped statements, the court emphasized that "you may only use [Davidson's] statements for the purpose of determining the Defendant's notice and knowledge of Lemaricus Davidson's

involvement in the carjacking, not to determine whether the Government has proved the elements of the carjacking against Lemaricus Davidson."

The jury found Boyd guilty of both counts. The district court sentenced Boyd to 180 months for being an accessory after the fact, and 36 months for misprision of a felony, the statutory maximum terms of imprisonment on each count.

## II.

### A.        Admissibility of Davidson's Statements to Boyd

#### i.        Hearsay

Whether a statement constitutes hearsay is a legal question that we review de novo. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 378 (6th Cir. 2009). Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. ("FRE") 801(c). An out-of-court statement offered to prove something other than the truth of the matter asserted falls outside the definition of hearsay and is admissible. *United States v. Talley*, 164 F.3d 989, 998-99 (6th Cir. 1999). Statements offered to prove the listener's knowledge are not hearsay. *United States v. Johnson*, 71 F.3d 539, 543 (6th Cir. 1995).

Boyd argues that Davidson's out-of-court statements are inadmissible hearsay because they were offered for the truth of the matter asserted—that a carjacking indeed occurred. In the alternative, he contends the statements are hearsay because the "logical inference to be obtained from these statements is that Lemaricus Davidson committed the crime of carjacking." Without Davidson's statements, Boyd argues it is "likely that a carjacking could not be proved."

Davidson's statements to Boyd were properly admitted as non-hearsay offered to prove Boyd's knowledge of the carjacking and murders.[1] *See Johnson*, 71 F.3d at 543; *United States v. Mays*, 69 F.3d 116, 121 (6th Cir. 1995); *Hiram v. United States*,

---

[1] Note that Boyd's recounting of Davidson's statements presents a double hearsay issue, because it constitutes a statement within a statement. There is no dispute that Boyd's statements to police were admissible under the admission by a party-opponent exception. *See* FRE 801(d)(2).

354 F.2d 4, 6-7 (9th Cir. 1965).  Both charges required the Government to prove that Boyd had knowledge of a crime.  As Boyd's "state of mind is an element of the offense, this evidence is relevant."  *See Johnson*, 71 F.3d at 543.  Because "the proffered testimony was probative" to Boyd's knowledge, the evidence is not hearsay.  *See Mays*, 69 F.3d at 121.  Moreover, the district court properly instructed the jury to use the statements only for the purpose of determining Boyd's notice and knowledge of Davidson's involvement in the carjacking, and not in determining whether the Government proved that Davidson in fact committed the carjacking.  *See id.*  There was ample other evidence establishing the fact that Davidson committed the carjacking.

Boyd's argument that the statements are hearsay because they contain implicit factual assertions is similarly without merit.  As an initial matter, this argument does not appear to have been raised in the district court.  *See United States v. McDowell Contractors, Inc.*, 668 F.2d 256, 257 (6th Cir. 1982).  Regardless, the statements are not hearsay because "the government did not offer the statements to prove the truth of those implicit assertions."  *United States v. Rodriguez-Lopez*, 565 F.3d 312, 315 (6th Cir. 2009).  Rather, the Government offered the statements to prove Boyd's knowledge, and the district court prudently instructed the jury to use the statements for that purpose only.

The decision in *United States v. Reynolds*, 715 F.2d 99 (3d Cir. 1983), which Boyd relies on, does not suggest a different conclusion.  The defendant in *Reynolds*, charged with conspiracy, stated to an alleged co-conspirator, "I didn't tell them anything about you."  *Id.* at 103.  The Government sought to introduce this statement as non-hearsay, arguing that the "significance of the statement is that it was made."  *Id.*  The court disagreed, because the "statement's probative value depends on the truth of an assumed fact it implies."  *Id.*  As introduced, the statement was used "to prove the truth . . . of defendant's guilt implied by its content."  *Id.*  Additionally, there was "no evidence independent of [the defendant's] statement to prove the existence of a conspiracy."  *Id.* at 103 n.2.  By contrast, the probative value of Davidson's statements does not depend on the truth of the facts implied.  Davidson's statements are probative

of Boyd's knowledge regardless of whether the statements were truthful, and there is independent evidence to prove the fact that a carjacking occurred.

### ii.    Confrontation Clause

We review a defendant's claim that the district court violated his Confrontation Clause rights de novo. *United States v. Johnson*, 430 F.3d 383, 393 (6th Cir. 2005). "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Testimonial out-of-court statements offered to establish the truth of the matter asserted are admissible only when (1) the declarant is unavailable and (2) the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.* at 59 n.9; *see United States v. Davis*, 577 F.3d 660, 670 (6th Cir. 2009) ("[T]o constitute a Confrontation Clause violation, the statement must be used as hearsay–in other words, it must be offered for the truth of the matter asserted." (internal quotation marks and citation omitted)).

A statement is testimonial if a reasonable person in the declarant's position would have anticipated the use of the statement in a criminal proceeding. *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004). Thus, statements made to police in the course of an official investigation are testimonial. *United States v. Gibson*, 409 F.3d 325, 338 (6th Cir. 2005). By contrast, statements made to friends and acquaintances are non-testimonial. *See Crawford*, 541 U.S. at 51 ("An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."); *United States v. Johnson*, 440 F.3d 832, 843 (6th Cir. 2006) (holding statements non-testimonial because defendant had a "long-standing and close association" with declarant); *United States v. McCullough*, 150 F. App'x 507, 509 (6th Cir. 2005) (holding statements to a "companion" non-testimonial).

Boyd argues that the admission of Davidson's statements violated the Sixth Amendment Confrontation Clause because he "had no opportunity to confront"

Davidson. He contends that Boyd provided Davidson's statements to police during an interrogation, rendering them testimonial.

This argument is without merit. First, the statements do not trigger the Confrontation Clause because they were offered as non-hearsay. *See supra* Part A.i.; *Crawford*, 541 U.S. at 59 n.9; *Davis*, 577 F.3d at 670. Davidson's statements to Boyd were offered to prove Boyd's knowledge, rather than the truth of the matter asserted. The statements are also non-testimonial. Davidson made the statements to a companion, and a reasonable person in Davidson's position would not have anticipated the use of the statements in a criminal proceeding. *See Crawford*, 541 U.S. at 51; *Johnson*, 440 F.3d at 843; *McCullough*, 150 F. App'x at 509.

**B.     Duplicity**

Separate offenses must be charged in separate counts of an indictment. Fed. R. Crim. P. 8(a). "An indictment is duplicitous if it sets forth separate and distinct crimes in one count." *United States v. Davis*, 306 F.3d 398, 415 (6th Cir. 2002). "The vice of duplicity is that a jury may find a defendant guilty on the count without having reached a unanimous verdict on the commission of any particular offense." *United States v. Campbell*, 279 F.3d 392, 398 (6th Cir. 2002) (internal quotation marks and citation omitted). "While a duplicative indictment can prejudice a defendant in a variety of ways, the primary concern is that a defendant may be deprived of his right to a unanimous jury verdict." *United States v. Kakos*, 483 F.3d 441, 443 (6th Cir. 2007). A duplicative indictment can also prejudice the defendant in the shaping of evidentiary rulings. *Id.*

Boyd argues that the indictment is duplicitous because it charges him in Count I with being an accessory after the fact to a "carjacking which resulted in death *and* serious bodily injury." According to Boyd, the use of the conjunctive "and" creates the duplicity, because under 18 U.S.C. § 2119, carjacking resulting in serious bodily injury is a separate offense from carjacking resulting in death. *See Jones v. United States*, 526 U.S. 227, 251-52 (1999). He alleges Count II's misprision charge is duplicitous for the same reason. Boyd further argues that the allegedly duplicitous indictment led to

improper evidentiary rulings under FRE 403. Specifically, "charging death and serious bodily injury in the conjunctive opened the door to [the medical examiner's] evidence involving sexual assault." This is presumably because the evidence of the sexual assaults would not be admissible to prove carjacking resulting in death.

As an initial matter, Boyd's duplicity argument was not raised below. The failure to raise the question of duplicity prior to trial and verdict waives the argument, at least with respect to technical errors in the indictment. *See* Fed. R. Crim. P. 12(b)(3); *United States v. Dedman*, 527 F.3d 577, 600 n.10 (6th Cir. 2008). However, "the alleged harm to the defendant's substantive rights resulting from a duplicitous indictment can be raised on appeal, notwithstanding the defendant's failure to make a pretrial motion." *Kakos*, 483 F.3d at 444. A defendant's objections to the indictment raised after trial are properly addressed, not to the indictment itself, but to the harm stemming from the duplicitous indictment. *Id.* Because Boyd alleges a prejudicial evidentiary determination stemming from the duplicitous indictment, we can review his claim on appeal. *See id.* But since Boyd did not raise this argument until after trial, we review only for plain error. *See id.* at 444-45; *United States v. Lloyd*, 462 F.3d 510, 514 (6th Cir. 2006).

###     i.     The Indictment

Turning first to the indictment itself, neither Count I nor Count II is duplicitous. The Supreme Court's reasoning in *Braverman v. United States*, 317 U.S. 49 (1942), and our reasoning in *Campbell*, 279 F.3d at 397-98, are instructive on this point. In *Braverman*, the defendant argued that the indictment was duplicitous because it charged one count of conspiracy to commit several crimes. 317 U.S. at 49-54. The Court held that a single count of conspiracy to commit several crimes is not duplicitous, because:

> The conspiracy is the crime, and that is one, however diverse its objects. A conspiracy is not the commission of the crime which it contemplates, and neither violates nor arises under the statute whose violation is its object . . . . The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute.

*Id.* at 54 (internal quotation marks and citations omitted).

We applied this reasoning in *Campbell*, 279 F.3d at 397-98.  In *Campbell*, the defendant argued the indictment was duplicitous because it charged conspiracy to distribute marijuana, conspiracy to distribute cocaine, and conspiracy to distribute crack cocaine in a single count.  *Id.*  We held that "an agreement to commit several crimes is not duplicitous, as conspiracy is itself the crime."  *Id.* at 398 (quoting *United States v. Dale*, 178 F.3d 429, 431-32 (6th Cir. 1999)).

In the same manner, a single count charging accessory after the fact to a carjacking that results in both serious bodily injury and death is not duplicitous, because being an accessory after the fact "is itself the crime."  *See id.*  Being an accessory after the fact under 18 U.S.C. § 3 "is not the commission of the crime which it contemplates, and neither violates nor arises under" the carjacking statute at 18 U.S.C. § 2119.  *See Braverman*, 317 U.S. at 54.  The same reasoning can be applied to misprision of the carjacking.  Accordingly, the indictment is not duplicitous.

The Third Circuit cases Boyd relies upon in his brief do not change this conclusion.  Boyd cites *United States v. Starks*, 515 F.2d 112 (3d Cir. 1975), in which the government charged both conspiracy to extort and attempt to extort in one count.  *Id.* at 115-16.  Because conspiracy and attempt are separate offenses, the court held the indictment duplicitous.  *Id.* at 116.  In *United States v. Pungitore*, 910 F.2d 1084 (3d Cir. 1990), one count of the indictment charged the defendants with attempted murder, conspiracy to murder, and murder as alternative theories within individual predicate acts in violation of RICO.  *Id.*  Although the court described its reasoning as "entirely hypothetical" because the jury indicated the theory of murder upon which it relied, it suggested that the indictment was "arguably" duplicitous because conspiracy to murder is not the same offense as a consummated murder.  *Id.* at 1136.  These cases are inapposite.  The indictment here charged a single crime in each count, based on violations of 18 U.S.C. §§ 3 and 4, respectively.  That the predicate carjacking resulted in both serious bodily injury and death does not render the indictment duplicitous.  *See*

*Braverman*, 317 U.S. at 54 ("The conspiracy is the crime, and that is one, however diverse its objects.").

### ii.     Medical Examiner's Testimony

Turning to the medical examiner's testimony, Boyd first argues that the testimony about the sexual assaults was prejudicial and "exacerbated by the duplicitous indictment." Specifically, "[a]s this case was charged the district court is forced to make an erroneous evidentiary ruling because the offense charged was improperly worded in the indictment." As discussed above, the indictment was not duplicitous. Consequently, the alleged duplicity could not have "exacerbated" the testimony's prejudicial effect.

Alternatively, Boyd argues that even if the allegedly duplicitous indictment did not affect the evidentiary ruling, the medical examiner's testimony should be excluded because it is more prejudicial than probative. We review this alternative claim for abuse of discretion. *See United States v. Guthrie*, 557 F.3d 243, 249 (6th Cir. 2009). We afford the district court "very broad discretion in determining whether the danger of undue prejudice outweighs the probative value of the evidence" under FRE 403. *United States v. Mack*, 258 F.3d 548, 555 (6th Cir. 2001).

Evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. FRE 403. Evidence is not unfairly prejudicial simply because it is gruesome or disturbing. *See United States v. Brady*, 595 F.2d 359, 361-62 (6th Cir. 1979) (admitting photographs of dead victims' bodies because "[w]hile the photographs were not absolutely necessary to prove this element of the crime, they were highly probative on the matter"); *United States v. Mellies*, 329 F. App'x 592, 600 (6th Cir. 2009) (unpublished) (finding images of child pornography "inherently disturbing," but not unfairly prejudicial because they were "essential to proving an element of the charged crime") (emphasis removed); *accord United States v. Salameh*, 152 F.3d 88, 123 (2d Cir. 1998) ("There is no doubt that the testimony and photographs of the victims were shocking, and a significant amount of such evidence was admitted. Nevertheless . . . the evidence had substantial probative value. Probative evidence is not inadmissible solely because it has a tendency to upset or disturb the trier of fact.").

To sustain a conviction for misprision of felony, the Government must prove beyond a reasonable doubt that the principal committed the felony alleged. *United States v. Stuard*, 566 F.2d 1, 1 (6th Cir. 1977) (per curiam). Likewise, to convict a defendant of being an accessory after the fact, the Government must prove the commission of the underlying offense. *United States v. Jeffries*, No. 86-3205, 1986 WL 18524, *2 (6th Cir. Dec. 16, 1986); *United States v. De La Rosa*, 171 F.3d 215, 221 (5th Cir. 1999).

The district court did not err in admitting the medical examiner's testimony because it was probative of elements the Government had to prove to convict Boyd. *See Stuard*, 566 F.2d at 1; *Jeffries*, 1986 WL 18524, at *2. Dr. Mileusnic-Polchan's testimony showed that Davidson committed a carjacking that resulted in serious bodily injury and death. The nature of her testimony was undoubtedly horrific, but it was also highly probative to this element of the two offenses charged. It is also worth noting that the Government prudently elected not to present graphic autopsy photographs or close-up photographs of the victims' bodies. *See United States v. Vretta*, 790 F.2d 651, 656 (7th Cir. 1986); *United States v. Sampol*, 636 F.2d 621, 680 (D.C. Cir. 1980).

**C.      Offer to Stipulate**

We review the district court's evidentiary rulings for abuse of discretion. *United States v. Abel*, 469 U.S. 45, 54-55 (1984). The Government is entitled to introduce its own evidence to prove every element of its case. *Old Chief v. United States*, 519 U.S. 172, 186-87 (1997); *United States v. Hebeka*, 25 F.3d 287, 291 (6th Cir. 1994). "The government is not required to accept the defendant's stipulation, and the defendant has no right to selectively stipulate to particular elements of the offense." *Hebeka*, 25 F.3d at 291.

This rule is subject only to the narrow limitation imposed by *Old Chief*. In *Old Chief*, the Supreme Court held that it was error to refuse the defendant's offer to stipulate to his felon status in order to prevent the jury from being unduly prejudiced by the nature of his prior offense. 519 U.S. at 180-192. The Court explicitly limited its holding "to cases involving proof of felon status." *Old Chief*, 519 U.S. at 183 n.7. By contrast,

"when a defendant seeks to force the substitution of an admission for evidence creating a coherent narrative of his thoughts and actions in perpetrating *the offense for which he is being tried*," the prosecution remains entitled to present its evidence.  *Id.* at 192 (emphasis added).  Indeed, "the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away."  *Id.* at 189.

This rule remains applicable to the prosecutor's introduction of sensitive or gruesome evidence to prove elements of an offense.  *See Mellies*, 329 F. App'x at 599 ("[E]ven in the sensitive arena of child pornography cases, a defendant's offer to stipulate does not deprive the government of its right to reject the offer and present its evidence, particularly because the government bears the burden of proving the accused guilty beyond a reasonable doubt."); *Brady*, 595 F.2d at 361-62 (holding photographs of deceased victims' bodies were properly introduced because the photographs were "highly probative" of bank robbery resulting in death); *Sampol*, 636 F.2d at 679 (holding district court's admission of a medical examiner's testimony proper because, although "gruesome," it was relevant to the elements of the offense).[2]    Accordingly, the Government was entitled to prove the element of carjacking resulting in serious bodily injury and death "by evidence of its own choice," rather than by stipulation.  *Old Chief*, 519 U.S. at 186; *see Hebeka*, 25 F.3d at 291.

Similar to his duplicity argument, Boyd's contention that the court erred in refusing his stipulation is bound up with an argument that the medical examiner's testimony was unduly prejudicial under FRE 403.  The nature of the testimony probative to this element of the offense was undoubtedly prejudicial to Boyd's case.  However, we afford the district court "very broad discretion in determining whether the danger of undue prejudice outweighs the probative value of the evidence" under FRE 403.  *Mack*, 258 F.3d at 555 (internal quotation marks and citation omitted).  Here, the district court did not abuse its discretion.  *See Brady*, 595 F.2d at 361; *Mellies*, 329 F. App'x at 599.

---

[2] Such evidence, of course, remains subject to FRE 403 and may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

**D.      Prosecutorial Misconduct**

   **i.      Prosecutors' Statements During Closing Arguments**

We review claims of prosecutorial misconduct that were objected to in the trial court de novo. *United States v. Green*, 305 F.3d 422, 429 (6th Cir. 2002). We review prosecutorial statements that were not objected to in the trial court for plain error. *United States v. Henry*, 545 F.3d 367, 376 (6th Cir. 2008). We should reverse a conviction under plain error review only in "exceptional circumstances [where] the error is so plain that the trial judge and prosecutor were derelict in countenancing it." *Id.* at 376-77.

We employ a two-step analysis for determining whether prosecutorial misconduct occurred. *Id.* at 376. First, we determine whether the statements were improper. *Id.* Second, we ask whether the remarks were so flagrant as to warrant reversal. *Id.* Under the second prong, we take into account four factors: (1) the degree to which the conduct or remarks tended to mislead the jury or prejudice the defendant; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally put before the jury; and (4) the overall strength of the evidence against the defendant. *United States v. Francis*, 170 F.3d 546, 549 (6th Cir. 1999).

We afford "wide latitude to a prosecutor during closing argument, analyzing the disputed comments in the context of the trial as a whole and recognizing that inappropriate comments alone do not justify reversal where the proceedings were otherwise fair." *Henry*, 545 F.3d at 377 (internal quotation marks and citation omitted). The prosecution is not required to present closing arguments that are "devoid of all passion." *Byrd v. Collins*, 209 F.3d 486, 532 (6th Cir. 2000) (internal quotation marks and citation omitted).

Boyd contends the prosecutors' statements during closing arguments were "flagrant attempt[s] to inflame the passions and emotion of the jury." He points to Prosecutor Stone's description of the crime as "unspeakable," and his comment that

"some humans are just not human." Prosecutor Jennings also referenced the victims by name and alluded to their "hellacious" experience, before concluding:

> Channon Christian and Christopher Newsom are lying peacefully in their respective graves today, cool winds blowing above them. They cannot hear my plea to you for their families to see justice. But with your verdict, your collective voices resonating loudly to this man right here, when you come back in this courtroom and you say "guilty," these families . . . are going to take the first road and the step to justice.

Boyd objected to this closing comment, but did not object to any of the other statements.

We turn first to Prosecutor Jennings's closing comment. In *Bedford v. Collins*, 567 F.3d 225, 234 (6th Cir. 2009), we held that "[n]othing prevents the government from appealing to the jurors' sense of justice, or from connecting the point to the victims in the case." *Id.* (citing *Coe v. Bell*, 161 F.3d 320, 351 (6th Cir. 1998), and *Hicks v. Collins*, 384 F.3d 204, 222 (6th Cir. 2004)). By contrast, the prosecution may not urge jurors to identify individually with the victims with comments like "it could have been you," or "fan the flames of the jurors' fears by predicting that if they do not convict, a crime wave or some other calamity will consume their community." *Id.* (citing *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008), and *United States v. Solivan*, 937 F.2d 1146, 1152-53 (6th Cir. 1991)).

Prosecutor Jennings's statement urging the jury to do justice for Christian and Newsom was proper under *Bedford*, but his additional comments depicting the "cool winds blowing above them" in their respective graves improperly appealed to the passions of the jurors. Although the prosecution is not required to present a closing argument "devoid of all passion," *Byrd*, 209 F.3d at 532, this comment was unnecessary to the case against Boyd and improperly incited an emotional response. In the context of Boyd's entire trial, however, these remarks were not so flagrant as to warrant reversal. *See Duckett v. Mullin*, 306 F.3d 982, 992-93 (10th Cir. 2002) (holding prosecutor's statements during closing argument reminding jurors that the victim was "cold in his grave" while defendant would get three meals a day, clean sheets, and visits by friends and family in prison did not deprive defendant of a fair trial). In view of the entire trial

and the overwhelming strength of the evidence against Boyd, Jennings's comments did not deprive Boyd of a fair trial.  *See id.*; *Francis*, 170 F.3d at 549-50.

Prosecutor Stone's statement that "some humans are just not human" was also unnecessary, "but it goes no further than similar comments that have not required setting aside a [] conviction," particularly under plain error review.  *See Bedford*, 567 F.3d at 234 (holding that the prosecutor's description of the defendant as a "demon" did not deprive him of a fair trial) (citing *Olsen v. McFaul*, 843 F.2d 918, 930 (6th Cir. 1988) (holding that prosecutor's deliberate, repeated references to defendant as a "deadbeat," a "thief," a "creep," and a "liar" did not violate due process), and *Byrd*, 209 F.3d at 536 (same regarding prosecutor's repeated references to defendant as a "predator")).  Even if we assume this comment was improper, we should not reverse the conviction because the comment was isolated and the evidence showing Boyd's guilt of the two crimes charged was strong.  *See Hicks*, 384 F.3d at 222; *Francis*, 170 F.3d at 549.

Nor do the prosecutors' statements referencing the crimes against the victims constitute plain error.  These comments alluded to horrific facts, but these were the facts already admitted into evidence and necessary for establishing the elements of the crimes charged against Boyd.  *See Bedford*, 567 F.3d at 234.  The prosecutors avoided discussing the more gruesome details of the murders, which were also already admitted into evidence, explaining that they would not "go through the whole story of everything Lemaricus Davidson did over those days" because "[t]here's no need to do that."

### ii.     Improper Vouching

Boyd also argues that the prosecutors improperly vouched for the credibility of witnesses in their closing statements.  Because Boyd did not object at trial, we review this argument for plain error.  *See Henry*, 545 F.3d at 376.

"Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness." *Francis*, 170 F.3d at 550.  Improper vouching generally involves blunt statements asserting personal

belief, or comments implying special knowledge of facts not before the jury or special knowledge regarding the credibility or truthfulness of a witness. *Id.* It is not improper for a prosecutor to "attempt to explain why, based on the facts, [a] witness's testimony is honest after the same has been attacked by the defense." *Henry*, 545 F.3d at 379.

The prosecutors' comments do not amount to improper vouching. The majority of the statements Boyd complains of merely point out the inconsistencies in Boyd's statements to police and other individuals. These statements neither bluntly assert the prosecutors' personal beliefs nor imply knowledge of facts not before the jury. Rather, the statements are supported by evidence in the record. *See United States v. Reid*, 625 F.3d 977, 985 (6th Cir. 2010) ("Without expressing a personal opinion or belief regarding the truth or falsity of a witness's testimony, the prosecutor may argue that the jury should arrive at a particular conclusion based on the evidence."); *Henry*, 545 F.3d at 379. Moreover, Boyd specifically attacked the credibility of Government witnesses in his own closing arguments. Because defense counsel attacked the credibility of the Government's witnesses, the prosecutors were free to respond by arguing that those witnesses should be believed. *See Reid*, 625 F.3d at 985.

**AFFIRMED.**