NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0545n.06

No. 24-5024

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 25, 2025
KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

AMBER WISE,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

OPINION

---

Before: MOORE, BUSH, and DAVIS, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** After a four-day trial, a jury convicted Defendant-Appellant Amber Wise of money laundering and conspiracy to distribute heroin and fentanyl. Wise now seeks to have her conviction vacated based on the admission of two sets of text messages taken from the cell phone of one of Wise's co-conspirators. We find no reversible error and **AFFIRM**.

**I.**

At Wise's trial, the jury heard testimony from several members of a drug trafficking conspiracy: Wise herself, Harvey "Mike" Horn, and Breanna Heatherly. Heatherly and Horn were drug dealers, and Wise was their supplier. But they had another connection. Horn was also the father of one of Wise's children and the current boyfriend of Heatherly.

In March 2020, law enforcement began investigating alleged heroin sales in Knoxville, Tennessee, with Heatherly as the primary target. After conducting several controlled buys from Heatherly using a confidential informant, law enforcement learned of two other potential

conspirators—Horn and Wise. Special Agent Neal Baldwin, the head of the investigation, then arranged for confidential informants to conduct controlled buys from Horn. All told, law enforcement conducted eight controlled buys of a combination of heroin, fentanyl, and acetyl fentanyl—six from Heatherly and two from Horn. Law enforcement arrested Horn and Heatherly on April 24, 2020.

Following the arrests, Special Agent Baldwin reviewed Horn and Heatherly's cell phone geolocation data to determine where they had been traveling. Horn regularly visited a Walmart and Heatherly, a Dollar General. From this, Special Agent Baldwin suspected that Horn and Heatherly could be laundering the proceeds of their drug sales through wire transfer institutions located inside those other businesses. He sent administrative subpoenas to the major wire transfer institutions hoping to uncover the recipient of Horn and Heatherly's wire transfers.

This brings us to Wise. The administrative subpoenas showed that both Wise and her daughter Mychelle had received several payments from Horn and Heatherly in varying amounts. Wise and Mychelle also received payments from several other known drug users, including Heatherly's mom, Kelli. Wise received $27,865 in wire transfers from July 2018 through late April 2020.

Beyond the basis for suspected money laundering, police received some other information from Heatherly's arrest. Heatherly consented to law enforcement's search of her phone and extraction of its contents. She had over 18,900 text messages. These included text chains relevant to this appeal. The first, Exhibit 36, was a text conversation between Heatherly and her mother, Kelli, involving a discussion of when additional drugs would be arriving in town and when Heatherly could bring Kelli some more. The district court admitted this exhibit without objection. The second, Exhibit 37, was a text conversation between Heatherly and a drug customer named

BR.  BR asked Heatherly to bring him drugs in exchange for BR later returning the favor and providing drugs to her.  Overruling Wise's objection, the district court admitted this exhibit with a limiting instruction that BR's text messages were to be used only to provide context to Heatherly's statements and not for their truth.

Heatherly testified to the context and substance of Exhibits 36 and 37, as well as additional facts relating to the drug trafficking conspiracy.  Heatherly explained that Wise would supply drugs for Heatherly and Horn to sell in Knoxville.  To get these drugs from Wise, Heatherly sometimes would drive to Detroit, Wise sometimes would drive to Knoxville, and sometimes they would meet halfway.  Heatherly also sometimes brought Horn or Kelli along for the ride to meet Wise. Heatherly would wire transfer a payment to Wise or Mychelle to pay for the drugs in advance. The MoneyGram wire transfer payments would go to either Wise or Mychelle, and were sent by more individuals than just Horn or Heatherly.  Kelli also sent MoneyGram payments to Mychelle more than once.  Heatherly and Wise would then coordinate a meeting place, and Wise would bring 300 grams or more of heroin or fentanyl in a fast-food bag.

Heatherly testified to these facts without reference to Exhibit 36 or 37.  When the government asked Heatherly about Exhibit 36, Wise did not object to any questions related to that exhibit or to Heatherly reading Kelli's statements into the record.  Heatherly read aloud two of Kelli's text messages.  The first said, "Bree babe please please please be sure&come back tonight,cause i have absolutely none for tomorrow…..please baby please??" App. A at 6.  The second, said, "Will you ask him&see if he would be interested in trading for those 2 coach purses,& a gucci purse, for amber or his girls,they are like brand new[?]" *Id.*  These were the only texts from Kelli discussed during Heatherly's examination, although the entirety of Exhibit 36 was produced to the jury.

Heatherly next testified about Exhibit 37.  Before this testimony, the district court reiterated its limiting instruction on the purpose for which the jury could use BR's messages.  Heatherly did not read any of BR's relevant text messages aloud.[1]  She instead orally relayed her own responses and testified to the context of her responses by describing what BR said to her that prompted her response.  For example, the government asked Heatherly to explain what was going on in the conversation, and Heatherly answered that BR was "wanting [her] to give him some of the fentanyl to help him out, and he would give [her] some back the next day."  R. 197, Trial Tr. Vol. II, PageID 1627.  Wise's counsel elected not to cross examine Heatherly on either Exhibit 36 or 37.

Shortly after Heatherly concluded her testimony, the government rested its case.  The district court then made an *Enright* finding[2] regarding Kelli's statements contained in Exhibit 36.  It determined that the government proved by a preponderance of the evidence that a conspiracy existed, that Wise was part of the conspiracy, and "that statements made by the various co-conspirators[, including Kelli,] were made in the course of and in furtherance of the conspiracy."  R. 197, Trial Tr. Vol. II, PageID 1684.

Wise then put on her own evidence, testifying in her own defense, and calling Horn as a witness.  After hearing all the evidence, the jury found Wise guilty on both counts.

**II.**

Wise preserved her objections to Exhibit 37, so we review its admission for an abuse of discretion.  *See United States v. Johnson*, 24 F.4th 590, 605 (6th Cir. 2022).  But she did not object

---

[1] Heatherly did begin by reciting BR's message stating, "Hey.  Hey.  What are u doin."  R. 197, Trial Tr. Vol. II, PageID 1627.  But the government then asked her not to read BR's messages aloud.

[2] An *Enright* finding is a determination regarding the admissibility of a co-conspirator's statements under Federal Rule of Evidence 801(d)(2)(E).  *See United States v. Martinez*, 430 F.3d 317, 325 (6th Cir. 2005) (citing *United States v. Enright*, 579 F.2d 980, 986–87 (6th Cir. 1978)).

to Exhibit 36 at trial, so we review its admission for plain error. *See United States v. Johnson*, 79 F.4th 684, 703 (6th Cir. 2023).

**III.**

The district court did not commit error by admitting BR's text messages from Exhibit 37 into evidence as contextualizing statements. Wise makes several arguments to support her position, but none persuade.

**A.**

BR's text messages in Exhibit 37 were not hearsay. They were not offered to prove the truth of the matter asserted, but to provide context for Heatherly's messages. The Federal Rules of Evidence define hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). The rules distinguish between statements that are not hearsay because they do not meet this definition and statements that meet the definition but can still be admitted under an exception. *Compare id.*, *with* Fed. R. Evid. 803, 804.

Statements offered to provide context do not count as hearsay because the proponent does not offer them for their truth but to place the other statements in context. *United States v. Jaffal*, 79 F.4th 582, 598 (6th Cir. 2023) (collecting cases). In other words, contextualizing statements do not meet the second part of the hearsay definition. These statements are admitted as non-hearsay, not as hearsay that meets an exception. *See id.*

Wise frames BR's texts as failing to meet a context exception to the hearsay rule that applies only when (1) the statement contextualizes a statement made by the defendant, or (2) "the declarant is a known and available individual." Reply Br. at 4. But Wise misses the reason that contextualizing statements are admissible. They do not come in as an exception to hearsay; they

come in because they are not hearsay in the first place. A statement offered only for its context is not offered for its truth, so it does not fall under Federal Rule of Evidence 801(c)'s definition of hearsay at all. *See Jaffal*, 79 F.4th at 598. Framing context as an exception to hearsay rather than as non-hearsay creates a new rule that does not line up with the text of the rules or our precedents.

Wise further argues that her proposed test limiting contextualizing statements better supports the purposes behind the hearsay rule. This is not persuasive for two reasons. *First*, Wise does not attempt to ground her test in the text of Rule 801(c). The text excludes statements offered for a purpose other than the truth of the matter asserted. The text is clear, so we will not add ambiguity by looking to the hearsay rule's purposes instead. *See Warger v. Shauers*, 574 U.S. 40, 44 (2014) (affording terms in a Federal Rule of Evidence "their plain meaning"). *Second*, contextualizing statements do not present the credibility concerns that the hearsay rule seeks to mitigate. *See United States v. Rodriguez-Lopez*, 565 F.3d 312, 315 (6th Cir. 2009). When a statement is offered not for its truth but for its impact on the hearer, it does not present a credibility issue because it "does not depend on the [declarant's] truthfulness, memory, or perception . . . ." *Id.*

**B.**

Wise next argues that BR's statements violated Federal Rule of Evidence 403 because they were substantially more unfairly prejudicial than probative. On review, we give the district court "very broad discretion" in its determination "whether the danger of undue prejudice outweigh[ed] the probative value of the evidence . . . ." *United States v. Boyd*, 640 F.3d 657, 667 (6th Cir. 2011) (citation omitted). We also "take[] a maximal view of the probative effect of the evidence and a minimal view of its unfairly prejudicial effect . . . ." *United States v. Gibbs*, 182 F.3d 408, 429 (6th Cir. 1999) (citation omitted). "Unfair prejudice does not mean the damage to a defendant's

case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." *Id.* (cleaned up). The district court here found that BR's statements in Exhibit 37 were not unfairly prejudicial because the statements provided context, were not offered for their truth, and the potential for prejudice was diminished through a limiting instruction. The minimal prejudice from BR's statements did not outweigh the probative value.

BR's statements were probative because they made Heatherly's statements more "comprehensible to the jury." *United States v. Knox*, 166 F.3d 1215, 1998 WL 777986, at *4 (6th Cir. 1998) (unpublished table opinion). In *Knox*, we held that a third party's contextualizing statements had probative value by increasing the probative value of the statements they contextualized. *Id.* The same holds true here. BR's statements have probative value because they, in turn, make Heatherly's statements more probative.

Wise argues that the prejudice from BR's texts came from an inference that BR knew "amber" referred to Amber Wise. Appellant Br. at 17. Yet BR never said that. Neither did he address that portion of Heatherly's message at all. Most of Wise's argument on this point devolves into a complaint that the evidence against Wise was weak and the government had to rely completely on Heatherly. But the government's reliance on Heatherly as a witness does not increase the prejudice of BR's statements. BR did not confirm that he knew Wise or that he was familiar with Wise's drug trafficking. In response to Heatherly's message, BR stated that he was at his house, presumably so Heatherly knew where to deliver his drugs. He did not mention Wise at all. Under Wise's reading, the only way that BR's contextualizing statement could avoid being unfairly prejudicial would be for BR to have affirmatively said that he did not know Wise. But we have never required such a response.

We have instead affirmed Rule 403 rulings on more prejudicial facts than the ones presented here. *See, e.g.*, *Gibbs*, 182 F.3d at 430. In *Gibbs*, the defendant was convicted of several drug and firearm related crimes. *Id.* at 419. Even though the drug conspiracy he took part in was not wholly gang related, photographs of T-shirts were admitted that showed the defendant's gang affiliation and admiration of violence. *Id.* at 430. We held this did not violate Rule 403. *Id.*

BR's statements were only minimally prejudicial by comparison. And any unfair prejudice was cured by the district court's limiting instruction, which it gave twice regarding Exhibit 37. Limiting instructions can sufficiently address the potential unfair prejudicial effect in most cases. *See United States v. Talley*, 164 F.3d 989, 1000 (6th Cir. 1999) (noting that "any potential prejudice was specifically addressed by the . . . extensive and carefully crafted limiting instruction the district court gave to the jury"); *cf. United States v. Lawson*, 535 F.3d 434, 441 (6th Cir. 2008) (finding that a limiting instruction sufficiently "eliminated any prejudice" that came from the indictment being read aloud to the jury). The district court's instruction to the jury sufficiently limited the potential unfair prejudice of BR's text messages.

Wise argues that the jury must have disregarded the district court's limiting instruction and used BR's statements for their truth, otherwise the jury could not have known that the conversation referred to drugs. The trial transcript contradicts this argument. The jury still would have known that the conversation related to drugs because Heatherly told the jury that her response was based on a text from BR seeking fentanyl.

Wise's argument also does not accord with our precedent. In *Rodriguez-Lopez*, we held that a request to buy drugs does not depend on its truth because the request does "not assert a proposition that could be true or false." 565 F.3d at 314. BR's request for drugs does not depend on its truth; it simply showed how Heatherly responded to a request for drugs. Whether BR wanted

drugs does not matter; only Heatherly's response did. *See id.* at 315 ("Even if the callers had no real desire for the drug and no faith that Rodriguez could deliver it, the fact that he received ten of these calls is still evidence of his participation in a heroin-distribution conspiracy.").

In any event, we presume that juries heed instructions, and because Wise has not provided evidence to rebut this presumption, her "rights are deemed protected by [the] limiting instructions" given by the district court. *Johnson*, 79 F.4th at 699 (citation omitted).

Wise falls back on the position that BR's statements were unfairly prejudicial because Exhibit 37 was critical to the government's case. Wise does not distinguish between BR's and Heatherly's statements in this argument. Heatherly's statements were no doubt critical to the government's case, and the government led with Heatherly's text message to BR in its closing argument. But the government never read BR's text message to Heatherly aloud, it just described what Heatherly testified to—that BR was asking for drugs. Wise does not distinguish between the prejudice that came from Heatherly's message, which Wise admits was properly admitted, and the prejudice that came from BR's, which looks slight considering the lack of emphasis placed on it at trial.

In sum, Wise's argument fails because the probative value of BR's texts was not substantially outweighed by any unfairly prejudicial effect.

**IV.**

The district court also did not err by admitting Kelli's text messages from Exhibit 36 because any error made regarding these texts was not plain and did not violate Wise's substantial rights.

A co-conspirator's statement can be admitted under Federal Rule of Evidence 801(d)(2)(E) only when evidence shows "(1) the conspiracy existed; (2) the defendant was a member of the

conspiracy; and (3) the co-conspirator made the proffered statements in furtherance of the conspiracy." *United States v. Warman*, 578 F.3d 320, 335 (6th Cir. 2009). Wise argues that the district court did not have enough evidence to find the second and third elements as they relate to Kelli's texts. In particular, Wise claims that the district court erred in its *Enright* finding by admitting Kelli's text messages in Exhibit 36 under the co-conspirator exception to hearsay.

Wise's counsel did not object to the admission of Exhibit 36 at trial and withdrew his objection to Exhibit 36 during the pretrial conference, so we review the admission of Kelli's statements in Exhibit 36 for plain error. *See United States v. Hall*, 20 F.4th 1085, 1100 (6th Cir. 2022). Plain error can be shown only when "(1) there was an error in the district court, (2) the error was plain, (3) the plain error affected the defendant's substantial rights, and (4) the plain error seriously affected the fairness, integrity or public reputation of judicial proceedings." *Johnson*, 79 F.4th at 703 (citation omitted). As part of this review, we remain "mindful that the plain error exception to the contemporaneous-objection rule is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Morrow*, 977 F.2d 222, 226 (6th Cir. 1992) (en banc) (cleaned up).

We need not analyze whether Kelli was a co-conspirator or whether her texts furthered the conspiracy because, in any event, Wise still cannot show plain error.

*First*, Wise cannot show that any error here affected her substantial rights. An error affects a defendant's substantial rights when the defendant can show "'a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *United States v. Hobbs*, 953 F.3d 853, 857 (6th Cir. 2020) (quoting *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016)). At bottom, Wise believes that the case against her was weak and so every piece of evidence was crucial. But she does not make any showing that Kelli's messages played a crucial

role in the outcome of her trial. The most damaging testimony in Exhibit 36 came from Heatherly's texts, not Kelli's. Heatherly's texts said that Wise was coming to town and that Horn could supply drugs the morning after Wise arrived. Wise does not contest that Heatherly's messages from Exhibit 36 were admissible, so the jury would have missed little by excluding Kelli's texts or by having her texts offered only for context.

Kelli's texts were not a point of emphasis. Few of those texts were read aloud to the jury and the government spent little time discussing Exhibit 36. Wise's counsel likewise elected not to spend time on this point and did not cross examine Heatherly on any portion of Exhibit 36. The fleeting nature of this testimony makes it unlikely to have affected the outcome of the trial. *See United States v. Stokes*, 834 F. App'x 213, 217 (6th Cir. 2020).

Kelli's side of the conversation also did not provide any new information. Her texts show that she knew Wise and that she knew about Wise's travel to and from Knoxville. But the jury was separately told that Kelli knew Wise. The jury heard evidence that Kelli sent MoneyGram payments to Wise's daughter and that Kelli traveled with Heatherly to meet Wise for drug purchases. Any prejudice that came from Kelli's text messages reiterating this point was not enough to affect the outcome.

As a final point, those text messages also could not have reasonably affected the outcome because some supported the theory of the case that Wise presented to the jury. Wise suggested that the MoneyGram payments from Kelli and others were just forms of child support because Horn shared a child with Wise and thought of Wise's other children as his own. Kelli's texts support this point. She suggested that in exchange for drugs, she could give Horn some purses "for [Wise] or his girls . . . ." App. A at 6. This text lines up with the defense theory that Horn

considered himself a provider for Wise's family.[3] Kelli's texts bolstering the defense's theory does not decide the point on its own, but it makes it less likely that Kelli's texts affected the outcome against Wise.

*Second*, Kelli's texts did not "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 736 (1993) (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)). Wise's only argument to the contrary is that she did not have the opportunity to cross-examine Kelli and challenge her statements. She does not elaborate on why this is true. Wise provides no reason she could not have called Kelli as a witness in her own case and does not explain why Kelli's text messages were "some of the most damaging evidence against her." Appellant Br. at 31. Since neither point is clear, Wise has not carried her burden of proof on this element.[4]

**V.**

For the reasons outlined above, we **AFFIRM** the decision of the district court.

---

[3] For all we know, this was the reason that Wise did not object to this testimony at trial and that Wise's counsel withdrew his objection to Exhibit 36. *See* 21 *Wright & Miller's Federal Practice & Procedure* § 5037 (2d ed. 2025) (noting that a "failure to object may arise from legitimate tactical considerations").

[4] Because Wise has not shown errors relating to Exhibits 36 and 37, her argument for cumulative error also necessarily fails. *See United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004).